In re Michael Steven HUDGINS, t/a
Hudgins Masonry, Debtor.

Michael Steven HUDGINS, t/a Hudgins
Masonry, Plaintiff–Appellant,

v.

INTERNAL REVENUE SERVICE,
Defendant–Appellee.

No. 91–1748.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1992.

Decided June 18, 1992.

Tom Cain Smith, Jr., Virginia Beach, Va., argued, for plaintiff-appellant.

William J. Patton, Tax Div. U.S. Dept. of Justice, Washington, D.C., argued, Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, Harry J. Giacometti, Tax Div., U.S. Dept. of Justice, Washington, D.C., Richard Cullen, U.S. Atty., J. Phillip Krajewski, Asst. U.S. Atty., Norfolk, Va., for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN, Chief Judge, and NIEMEYER, Circuit Judge.

ERVIN, Chief Judge:

Michael Steven Hudgins founded a masonry company and incorporated it as "Hudgins Masonry, Inc." The Commonwealth of Virginia terminated Hudgins Masonry's corporate charter because Hudgins had not paid certain required fees, but Hudgins continued to trade and file tax returns as "Hudgins Masonry, Inc." After Hudgins failed to pay employment withholding taxes to the Internal Revenue Service (IRS), the IRS filed a tax lien in the name of "Hudgins Masonry, Inc." Hudgins then filed for Chapter 11 bankruptcy protection and moved the bankruptcy court to avoid the IRS tax lien. The bankruptcy court ruled that Hudgins Masonry's assets were Hudgins' personal assets and that the IRS tax lien was not perfected against Hudgins personally; therefore, Hudgins could avoid the tax lien. The district court agreed with the bankruptcy court that the assets were Hudgins' personal assets but held that the IRS had perfected its tax lien, preventing avoidance. 132 B.R. 115 (E.D.Va.1991). Holding that the IRS tax lien was perfected but only as to Hudgins' business assets, we modify and affirm. Because Hudgins' assets have never been designated as business and non-business, we remand for that determination.

## I

Hudgins traded as Hudgins Masonry, Inc. in the Norfolk, Virginia area. In 1984, the Commonwealth of Virginia terminated Hudgins Masonry's corporate charter because Hudgins had failed to pay annual registration fees.[1] However, Hudgins

---

1. The Virginia Code provides that "[i]f any domestic corporation fails to pay by June 1 of the year assessed the annual registration fee, the [Virginia State Corporation] Commission shall mail notice to the corporation of its impending termination of corporate existence. The corporate existence of the corporation shall be automatically terminated if any such fee is unpaid

claims that he did not learn of this termination, and he continued to do business as Hudgins Masonry, Inc. More importantly for our case, Hudgins continued to file federal tax returns as "Hudgins Masonry, Inc." In 1988 and 1989, Hudgins failed to pay employment taxes. Late in 1989, the IRS filed notice of a tax lien against Hudgins for approximately $43,000. The IRS filed the notice with the Norfolk City Circuit Court and with the Virginia State Corporation Commission under the name of "Hudgins Masonry, Inc.," not knowing that the state had terminated Hudgins' corporate charter.

In January 1990, after learning that his business was no longer incorporated, Hudgins filed for Chapter 11 bankruptcy protection as an individual. In February 1990, he moved the Bankruptcy Court to avoid the IRS tax lien. In granting the motion, the bankruptcy court ruled (1) that the assets in question of Hudgins Masonry, Inc., which were mostly accounts receivable, were assets of Hudgins' personal estate and therefore subject to bankruptcy's automatic stay; and (2) that the IRS had failed to perfect its lien because it had filed in the wrong name.[2] On appeal, the district court agreed with the bankruptcy court that the assets were personal to Hudgins but reversed the second ruling, finding that any prospective purchaser of Hudgins' personal assets would have had constructive notice of the IRS lien against Hudgins. The district court found it dispositive that the lien on Hudgins Masonry filed in Norfolk was listed on the same page as the liens against individuals named Hudgins, and that there were only nine entries against persons or companies named Hudgins.[3] Because it held that the IRS had perfected its tax lien, the district

court reversed the bankruptcy court's granting of the motion to avoid the lien.

## II

■ We look first to the statutory language of the bankruptcy code and the tax code. Under 11 U.S.C. § 545(2), a bankruptcy trustee may avoid a statutory lien such as the IRS lien here to the extent that such lien:

> is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

In other words, section 545(2) requires us to determine whether the IRS lien was valid as against a hypothetical bona fide purchaser at the time Hudgins filed for bankruptcy. Under 26 U.S.C. § 6323(a), an IRS lien "shall not be valid as against any purchaser ... until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." Thus, we must determine whether the notice of the IRS lien met the IRS' own requirements. Section 6323(f)(3) states that "[t]he form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary." The applicable regulation, 26 C.F.R. § 301.6323(f)–1(c)(2), only states that the notice of lien "must identify the taxpayer." Therefore, our question boils down to whether the IRS lien against "Hudgins Masonry, Inc." sufficiently identified the taxpayer, Michael Hudgins, so as to give notice of the tax lien to a bona fide purchaser of Michael Hudgins' property. To answer that question, we must turn to case law.

We have found two approaches in the few courts that have dealt with similar

---

as of September 1 of that year...." VA.CODE ANN. § 13.1–752(B)(2) (Michie 1991).

**2.** In ruling that Hudgins Masonry's assets were Hudgins' personal assets, the bankruptcy court rejected the IRS' argument that Hudgins had formed a corporation by estoppel. The IRS originally filed a notice of cross-appeal on the corporation by estoppel issue, but has since decided to dismiss its appeal.

**3.** Besides the government's lien against "Hudgins Masonry, Inc.," two of the other eight listings were against the appellant. One of his creditors, Tarmac Virginia, Inc., apparently filed a lien against both "Michael Hudgins" and "Hudgins Masonry Corp–T/A." *See* J.A. 61.

situations. Some courts have applied a hard and fast rule that only notice giving the taxpayer's correct name is sufficient to perfect a federal tax lien. *See United States v. Glen Upton, Inc.*, 378 F.Supp. 1028 (W.D.Mo.1974); *see also F.P. Baugh, Inc. v. Little Lake Lumber Co.*, 297 F.2d 692 (9th Cir.1961). Other courts have considered whether a filing containing errors was nevertheless sufficient to give construction notice of the government's claim. *See Tony Thornton Auction Serv. v. United States*, 791 F.2d 635 (8th Cir.1986); *United States v. Sirico*, 247 F.Supp. 421 (S.D.N.Y.1965).

In rejecting the constructive notice approach, the *Glen Upton* court stated that "[i]t is irrelevant whether this Court believes it reasonable to have also checked under the corporate name, since the lien imposed by § 6323 is valid only if the required notice is filed." 378 F.Supp. at 1034. Similarly, the *Little Lake* court stated that "[w]e are passing on the validity of the lien, rather than notice of the tax assessments, either actual or constructive." 297 F.2d at 696. Thus, under the first, "bright line" approach, a court does not even reach the issue of constructive notice. If the IRS files in the wrong name, the lien is unperfected even if it might give notice to a reasonable searcher of the lien index. Here, under the "bright line" approach, the IRS lien against "Hudgins Masonry, Inc." would not be perfected because there was no such entity. In its favor, the bright line approach is very objective: Either the filing was correct or it was not.

On the other hand, the bankruptcy code seems to require the constructive notice approach. In section 545(2) quoted above, the bankruptcy code directs courts to determine whether a lien would be valid against a hypothetical bona fide purchaser of the bankrupt's assets. It is hornbook law that every purchaser is expected to search for recorded encumbrances on the property; that is, he is held to have constructive knowledge of recorded liens. Thus, the validity of a tax lien in bankruptcy must depend on the constructive notice that the lien would give a purchaser. It reasonably follows that when there is a mistake in the

indexing of a tax lien, as here, the validity of the lien in bankruptcy depends on whether it would nevertheless give a purchaser constructive notice. We thus respectfully disagree, at least in the bankruptcy setting, with the decisions of the *Glen Upton* and *Little Lake Lumber* courts to treat validity and constructive notice as two different questions.

Furthermore, the majority of courts in tax cases not involving bankruptcy proceedings have followed the constructive notice approach. *See, e.g., Tony Thornton Auction Service, Inc. v. United States*, 791 F.2d 635 (8th Cir.1986); *United States v. Sirico*, 247 F.Supp. 421 (S.D.N.Y.1965); *American Surety Co. v. Sundberg*, 58 Wash.2d 337, 363 P.2d 99 (1961), *cert. denied*, 368 U.S. 989, 82 S.Ct. 598, 7 L.Ed.2d 526 (1962). The test those courts apply is set out in *Sirico:*

> The essential purpose of the filing of the lien is to give constructive notice of its existence. The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give constructive notice and to alert one of the government's claim.

247 F.Supp. at 422. It does make sense that the real purpose of filing the lien is to give constructive notice. Not every purchaser will search for liens, so the filing will not always give actual notice, and the language of the tax and bankruptcy codes does not require "absolute perfection" in identifying the taxpayer.

The IRS argues that a final reason in favor of the constructive notice approach is that it would be inequitable to allow Hudgins to avoid the tax lien. The equities do seem to favor the IRS, because it relied on Hudgins' tax returns listing the taxpayer as "Hudgins Masonry, Inc." Also, the documents Hudgins filed when he petitioned for bankruptcy show that his assets exceeded his debts by $130,000, which supports the IRS' theory that Hudgins filed for bankruptcy protection solely to escape the IRS tax lien. Finally, avoiding the tax lien would allow Hudgins to profit from his

own mistake: losing his corporate charter due to the nonpayment of yearly fees.[4] Thus, after considering the bankruptcy code and case law from other jurisdictions, as well as the equities of this case, we hold that the constructive notice approach is appropriate in determining whether a tax lien is perfected and therefore unavoidable in bankruptcy.

■ The district court below followed the constructive notice approach. The district court found it significant that in Norfolk County liens against individuals and liens against corporations were filed in the same index. In the Norfolk lien index at the time Hudgins filed for bankruptcy protection, there were only nine total listings under "Hudgins," all of them on the same page. That circumstance led the district court to conclude "that there was constructive notice of a lien against the individual Michael Steven Hudgins." J.A. at 78. We find no error in the district court's conclusion, as applied to Hudgins' assets that were business-related. A purchaser of Hudgins' business assets would certainly have known that Hudgins traded as "Hudgins Masonry, Inc.," and, finding a lien against "Hudgins Masonry, Inc.," would have taken further steps to determine if the assets were encumbered.

■ As for Hudgins' assets that were not business-related, we have a legal concern that the parties and the district court did not address. The IRS lien was indexed against "Hudgins Masonry, *Incorporated.*" The IRS argued, and the district court apparently agreed, that this filing gave notice to purchasers of any of Michael Hudgins' assets. However, individuals are shielded from corporate liability. Therefore, even if a purchaser knew that Michael Hudgins the individual owned Hudgins Masonry, Inc., that purchaser would reasonably believe that any liens against the corporation would not be valid as against Hudgins' non-business assets. Thus, the lien against Hudgins Masonry, Inc. would not have given a hypothetical bona fide purchaser of Michael Hudgins' non-business

assets constructive notice that the assets were encumbered. For that reason, we must hold as a matter of law that the IRS lien was insufficient to give a hypothetical purchaser of Hudgins' non-business assets constructive notice and therefore was not perfected as to those assets. While it appears that most of Hudgins' assets were business-related, some, such as the $70,000 equity in his home, were not. We remand for a determination of the extent to which the lien was perfected and thus unavoidable, based on a breakdown of Hudgins' assets at the time of his bankruptcy petition into two categories: business and non-business. The lien should only be enforced against Hudgins' business assets. Accordingly, the judgment of the district court is hereby

AFFIRMED AS MODIFIED AND RE-MANDED.

---

**4.** The bankruptcy court has already avoided a second IRS lien, because the IRS filed it after

Hudgins petitioned for bankruptcy. That lien, for approximately $70,000, is not at issue here.