**In the Matter of Hugues J. DE LA VERGNE, II, DEBTOR.**

**Wayne C. DUCOTE, Trustee, Plaintiff,**

**v.**

**UNITED STATES of America, DEPARTMENT of the TREASURY, INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 88–03347.
Adv. No. 92–1170.**

United States Bankruptcy Court, E.D. Louisiana.

March 16, 1993.

**774**

### MEMORANDUM OPINION

JERRY A. BROWN, Bankruptcy Judge.

This matter comes before the Court upon the complaint to avoid lien, for determination of secured status, and for declaratory judgment filed by the trustee, Wayne C. Ducote ("Trustee"). The Trustee alleges a federal tax lien filed against the debtor on May 13, 1988 should be: (a) avoided due to lack of due and proper notice to the taxpayer; (b) avoided as a preferential transfer; (c) deemed inferior to the judicial mortgage of Louis V. de la Vergne; and (d) deemed a priority, unsecured claim for the amount of the federal tax lien plus interest as of the date of the bankruptcy filing only. The United States denies the allegations of the complaint, and contends it is entitled to secured status for the entire federal tax plus interest owed. A trial on the merits was held on November 6, 1992. Considering the evidence at trial, the arguments and briefs of counsel, the pleadings, and

the applicable law, judgment will be entered in favor of the plaintiff and against the defendants.[1]

### FINDINGS OF FACT

The debtor, Hugues J. de la Vergne, II ("de la Vergne") failed to pay federal employment withholding taxes (Form 941) for all four quarters of 1986. As of November 6, 1992, the debtor's unpaid balance for the Form 941 taxes owed for 1986, is $93,682.29, including taxes, penalties, and interest.

The United States through the Internal Revenue Service filed a Notice of Federal Tax Lien evidencing its lien for these four quarters on May 13, 1988, with the Custodian of Notarial Records for the Parish of Orleans (the "Federal Tax Lien" or the "Federal Tax Lien of May 13, 1988"). (Tr. Ex.1). The Federal Tax Lien was recorded by the Recorder of Mortgages for the Parish of Orleans on May 16, 1988, and incorrectly identified the debtor as: "Hugh es J. de la Vero ne II *Payroll Account*", rather than "Hugu es J. de la Verg ne". The amount of the lien was $49,528.44. (Tr.Ex. 1).[2]

On August 12, 1988, the debtor filed his petition for relief under Chapter 11. From that point until Wayne Ducote was appointed as trustee by the Court on December 12, 1990, de la Vergne operated as a debtor-in-possession.

The United States filed two Notices of Federal Tax Lien on October 3, 1988, for the Form 941 tax liabilities owed for 1987 and the first quarter of 1988, as well as the Form 940 liability owed for 1987. (D.Ex. 43–A, 43–B). Because these notices were filed while the automatic stay was in effect, the United States subsequently filed a Notice of Erroneously Filed Notices of Federal Tax Liens acknowledging this error and the ineffectiveness of the filing while the stay was in place. (D.Ex. 43–C).

---

**1.** This Memorandum Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The matter is a core proceeding under 28 U.S.C. § 157(b)(2).

**2.** To be valid against third parties, the Federal Tax Lien had to be filed with the Recorder of Mortgages for the Parish of Orleans. *See* La. R.S. 52:52:B. However, the three day delay between the filing with the Custodian of Notarial Records of Orleans Parish and the Recorder of Mortgages for the Parish of Orleans is of no significance to the issues presented.

On October 25, 1988, the United States filed a proof of claim, dated October 18, 1988, that reflects its secured claim for the Form 941 taxes for 1986, as well as its unsecured claim for tax liabilities for 1987 and 1988. (D.Ex. 50). The United States filed an amended and superseding proof of claim dated April 26, 1989, on May 2, 1989, which made certain deletions to the unsecured tax liabilities for 1988. (D.Ex. 50).

By Order and Memorandum Opinion entered on February 20, 1992, this Court approved a Compromise and Settlement Agreement in this case. (D.Ex. 26). The agreement involved numerous compromises and exchanges principally by and among the Trustee, Louis de la Vergne, and the Hibernia National Bank. By virtue of the agreement, the secured claim of Louis de la Vergne was compromised. (D.Ex. 18). Under the terms of the compromise, several sales of movable and immovable property of the estate have been consummated. The United States has objected to the sale of properties located at 3 Garden Lane and the Georgian Apartments. Pursuant to Court Orders, the Trustee has escrowed a portion of the proceeds of the sales pending determination of the validity, rank, priority, and extent of all encumbrances, including the Federal Tax Lien of May 13, 1988. The tax claims reflected on the proof of claim filed by the United States are for taxes excepted from discharge by virtue of 11 U.S.C. § 523(a)(1)(A) and 507(a)(7)(C).

The Trustee seeks to avoid the Federal Tax Lien, and contends that the United States should be recognized as a priority, unsecured claim, and any penalties subordinated to a general unsecured claim. The Trustee argues the Federal Tax Lien is avoidable under Sections 544, 548, and 551 of the Bankruptcy Code. The United States asserts it is a secured creditor for the debtor's liability for Form 941 taxes for 1986.

### CONCLUSIONS OF LAW

### A. VOIDABILITY UNDER SECTIONS 544 and 545

■ Section 544 provides a bankruptcy trustee with "strong arm" powers to avoid any transfer of property of the debtor, or obligation incurred by the debtor, that would be voidable by a bona fide purchaser of the property. *See In re Sandy Ridge Oil Co., Inc.,* 807 F.2d 1332, 1334 (7th Cir.1986).

■ Section 545 provides a trustee with powers to avoid certain statutory liens. A statutory lien is defined by 11 U.S.C. § 101(53) as "[a] lien arising solely by force of a statute on specified circumstances or conditions, ...". Federal tax liens are statutory liens within the meaning of Section 545. 11 U.S.C. § 101(53); *In re Carolina Resort Motels, Inc.,* 51 B.R. 447 (Bankr.D.S.C.1985); *In re Barry,* 31 B.R. 683 (Bankr.S.D.Ohio 1983); 4 *Collier's on Bankruptcy* at 545–21—545–24 (15th ed. 1992). Consequently, the provisions of Section 545, rather than the provisions of Section 544, are directly applicable to this case.

Section 545(2) provides:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

Therefore, a trustee may avoid a statutory lien pursuant to Section 545(2) on property only to the extent that such lien is not perfected or enforceable at the time of the commencement of the case. The issue to be determined by this Court is whether the Federal Tax Lien of May 13, 1988 was valid as against a hypothetical bona fide purchaser as of August 12, 1988 when the debtor filed for bankruptcy relief.

■ The validity and priority of federal tax liens are governed by the provisions of 26 U.S.C. § 6321, *et seq.,* and are a matter of federal law. *United States v. Brosnan,* 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); *United States v. Union Central Life Insurance, Co.,* 368 U.S.

291, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961). When a taxpayer neglects or refuses to pay a tax liability after assessment, notice, and demand, the amount due becomes "a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person". 26 U.S.C. § 6321.

■ Once a proper notice of federal tax lien is filed, the lien is valid against a subsequent purchaser of the encumbered property, provided that the purchaser is given notice of the encumbrance. 26 U.S.C. § 6323(a). The requirements for proper notice are set forth in Section 6323(f) which provides in pertinent part:

**Place for filing notice; form.—**

(1) **Place for filing.**—The notice referred to in subsection (a) shall be filed—

(A) **Under State laws.—**

(i) **Real property.**—In the case of real property, in one office within the State (or the county, or other governmental subdivision), as designed by the laws of such State, in which the property subject to the lien is situated; and

(3) **Form.**—The form and content of the notice referred to in subsection (a) shall be prescribed by the Secretary. Such notice shall be valid notwithstanding any other provision of law regarding the form or content of a notice of lien.

(4) **Indexing required with respect to certain real property.**—In the case of real property, if—

(A) under the laws of the State in which the real property is located, a deed is not valid as against a purchaser of the property who (at the time of purchase) does not have actual notice or knowledge of the existence of such deed unless the fact of filing of such deed has been entered and recorded in a public index at the place of filing in such a manner that a reasonable inspection of the index will reveal the existence of the deed, and

(B) there is maintained (at the applicable office under paragraph (1)) an adequate system for the public indexing of Federal tax liens, and

then the notice of lien referred to in subsection (a) shall not be treated as meeting the filing requirements under paragraph (1) unless the fact of filing is entered and recorded in the index referred to in subparagraph (B) in such a manner that a reasonable inspection of the index will reveal the existence of the lien.

26 U.S.C. § 6323(f).

■ Under the public records doctrine in Louisiana, third parties are only required to look at the public records to determine what interests and claims affect immovable property. La.R.S. 9:2721; *Cardinal Federal Savings Bank v. Corporate Tower Partners, Ltd.,* 564 So.2d 1282, 1288 (La. App. 3rd Cir.1990). All persons are held to have constructive notice of the existence and contents of recorded instruments affecting immovable property. *Id.* The Orleans Parish Recorder of Mortgages provides an indexing system for the public indexing of federal tax liens. Therefore, in accordance with the provisions of Section 6323(f)(4), the validity of the Federal Tax Lien of May 13, 1988 depends upon whether "a reasonable inspection of the index will reveal the existence of the lien".

Few courts have treated in detail the legal standards of what constitutes a reasonable inspection. In *Kivel v. United States,* 878 F.2d 301, 304 (9th Cir.1989), the Ninth Circuit stated:

The parties have agreed that what title companies in fact do is not itself decisive of the question of reasonableness. The district court heard conflicting expert testimony and then reached its own conclusion as to what was reasonable. Clearly, "reasonable" is a mixed question of fact and law.

In determining the extent of a "reasonable search", the *Kivel* Court stated:

At the outset we must decide whether a "reasonable inspection of the index" means that a searcher need only look at the index and has no obligation to go from the index to the actual conveyances that are indexed. Such a literal construction of language would not make sense.

878 F.2d at 304. The Court concluded that a reasonable inspection would have required the title searcher to look at the actual conveyances, and would have revealed an additional name used by a taxpayer, and a federal tax lien listed under that additional name. Although the *Kivel* holding is not directly applicable to the case at bar in which the taxpayer's name on the federal tax lien was misspelled, it does indicate that a reasonable inspection requires something more than merely examining the index under the taxpayer's name.

A recent Louisiana case summarized the type of search required by the Clerk of Court and ex officio Recorder of Mortgages for Lafayette Parish:

> The Clerk of Court is only required to search his records under the names furnished him by a party seeking a mortgage certificate. [citations omitted]. The Clerk is not required to check encumbrances against property under the names of previous owners when not provided with those names. [citations omitted].

*Cardinal Federal Savings Bank v. Corporate Tower Partners, Ltd.*, 564 So.2d 1282, 1289 (La.App. 3rd Cir.1990). *Cardinal Federal Savings* recognizes that a mortgage certificate obtained in a particular name only shows privileges and mortgages recorded under that name, and does not necessarily show all encumbrances against an immovable. *Id.* at 1288. The Court further stated:

> Merely obtaining a mortgage certificate in the incorrect name of Corporate Towers Partners, Ltd. is not an adequate search of the records to show all encumbrances existing on the immovable property and, if Cardinal Federal or any third party chooses to rely on such a search, it does so at its own peril. The Clerk of Court is only required to list in a mortgage certificate those encumbrances shown under the names given and variations of the name by middle name or initial.

564 So.2d at 1290. Therefore, a search performed by the Recorder of Mortgages Office is not necessarily a reasonable search under Section 6323.

■ A misspelling in the taxpayer's name does not automatically render a tax lien invalid. A federal tax lien is not invalid due to lack of adequate notice when only a slight error in misspelling of the taxpayer's name exists which would not have mislead someone searching the record. *See Richter's Loan Company v. United States*, 235 F.2d 753 (5th Cir.1956) (Holding federal tax lien is valid under Florida law even though it incorrectly spelled the taxpayer's name as "Freidlander" instead of "Friedlander); *United States v. Feinstein, et al.*, 717 F.Supp. 1552 (D.Fla.1989) (Slight misspelling of "Tarragon" as "Taragon" did not invalidate federal tax lien). The test frequently cited in the jurisprudence for the notice required by a federal tax lien was made in *United States v. Sirico*, 247 F.Supp. 421, 422 (S.D.N.Y.1965): "[t]he essential purpose of the filing of the lien is to give constructive notice of its existence. The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give constructive notice and to alert one of the government's claims". *See also In re Hudgins*, 967 F.2d 973 (4th Cir.1992).

With these principles in mind, the Court shall examine the facts of the present case.

The parties agree that the Federal Tax Lien of May 13, 1988 was prepared on the correct Form 668, and filed in the correct location with the Recorder of Mortgages for the Parish of Orleans. The parties further agree that the Federal Tax Lien contained the following errors: (1) incorrect spelling of the first name as "Hug*h* es", instead of "Hug*u* es"; (2) incorrect spelling of the last name as "Vero ne", instead of "Verg ne"; and (3) addition of the term "Payroll Account" after the taxpayer's name.

John Jagot IV, senior deputy clerk in the office of the Recorder of Mortgages for the Parish of Orleans, testified as to the proper method of indexing used by the Recorder of Mortgage's Office. Mr. Jagot testified that because the term "Payroll Account"

followed the taxpayer's name, the Federal Tax Lien was indexed under the first name on the lien, i.e. "Hughes". Mr. Jagot stated that indexing under "H" is required because the guidelines of the Recorder of Mortgages Office require that an entry against a business or corporate entity be indexed under the first name listed. The term "Payroll Account" indicated a business entity separate from the individual that was subject to the lien. As an example, Mr. Jabot stated that "Robert Dozier, A Professional Law Corporation" would be indexed under the first name, "Robert". Mr. Jagot further testified that when the Recorder of Mortgages Office issues a mortgage certificate, the certificate only includes liens listed under the exact names furnished by the person requesting the certificate.

On July 21, 1988, during the course of the Trustee's administration, the Trustee filed an application for private sale of the Emlah Court Apartments, owned in indivision by the debtor and his wife. The Trustee requested a mortgage certificate from the Orleans Parish Recorder of Mortgages on the property under the names: "Beatrice Badger wife of and Hug*h* es J. Delavergne II". The mortgage certificate did not disclose the Federal Tax Lien of May 13, 1988. (Tr.Ex. 5). The Trustee also requested other mortgage certificates on various properties owned by the debtor on later occasions. See Tr.Ex. 11, 12, 13, 14, 15, & 16. The mortgage certificates were requested under the names: (1) "Hug*u* es J. de la Vergne, II"; (2) "Hug*h* es J. de la Vergne, II"; or (3) "Hughes J. de la Vergne, II and Hugues J. de la Vergne, II". None of the mortgage certificates requested by the Trustee listed the Federal Tax Lien of May 13, 1988. See Tr.Ex. 11, 12, 13, 14, 15, & 16.

Jerald L. Curtner, an employee of the Internal Revenue Service, testified that he has routinely conducted searches of the records of the Recorder of Mortgages for the last fifteen years. Mr. Curtner was asked to conduct a search of the records of the Orleans Parish Recorder of Mortgages as he would normally and regularly do, and determine whether there were any tax liens against the debtor. Mr. Curtner was aware of the Federal Tax Lien at the time of his search. He stated that his standard procedure in searching the records of Orleans Parish led him to employ alternative syllabications of "delaVer" coupled with the omission of the final three characters and "II", and the inclusion or exclusion of the initial "H". He indicated that the computer index in Orleans Parish includes an automatic feature that searches the index alphabetically for all characters beyond those furnished as part of a name, thus revealing a range of names including and following the characters a searcher actually inputs. The inclusion of this feature in the computer program of the Recorder of Mortgages was designed to compensate for errors, including misspellings, of names. This feature allows an abstractor to find errors that would have been disclosed to the human eye by glancing at pages of an index that could not otherwise be done in a computerized index system. Mr. Curtner stated that one using the computerized index must suppress this feature in order to search for encumbrances by precise, literal names. By using variations of "delaVer" and omitting the final three characters and "II", Mr. Curtner was able to ascertain all encumbrances that began with "delaVer" and were followed by any additional characters, including "gne" or "one". (D.Ex. 44).

Mr. Curtner concluded that had the records of Orleans Parish included any other encumbrances against individuals with last names spelled beginning in "de la Ver", such encumbrances would have appeared in his search. Therefore, if the Federal Tax Lien had been indexed under "de la Verone II", it would have appeared on the same or an adjacent computer screen as the seventeen encumbrances Mr. Curtner discovered when he searched under "de la ver H.". Mr. Curtner also testified his search would have found the Federal Tax Lien if it had been indexed under "Verone" when he searched for variations of "Ver". Mr. Curtner concluded that the Recorder of Mortgages made an error in indexing the Federal Tax Lien under "H", rather than

under "D", because nothing on the lien indicated that it applied to any entity other than the individual debtor, "Hughes J. de la Verone II".

Based upon the testimony of Mr. Curtner, the United States argues that the Federal Tax Lien would have been found by a reasonable search of the records of the Recorder of Mortgages, despite the misspellings, if the lien had been properly indexed. The United States asserts that a mortgage which has been properly filed and recorded is effective against third persons even if it has not been indexed properly. *See Progressive Bank & Trust Co. v. Dieco Specialty Company, Inc.*, 421 So.2d 345 (La.App. 1st Cir.1982). The United States further contends that the credibility of Mr. Jagot is questionable because the Recorder of Mortgages is liable for injuries resulting from omissions in mortgage certificates attributable to errors made by the office, including errors in indexing. *See* La.C.C. art. 3394; *Housing Authority of Lafayette v. Fidelity & Deposit Company of Maryland, Inc.*, 309 So.2d 920, 927 (La. App. 3rd Cir.1975). In support, the United States refers to two other federal tax liens filed against "Hugues J. de la Vergne, II—Payroll Accountant", and indexed under "de la Vergne" rather than "Hugues". (D.Ex. 43–A, 43–B).[3]

■ This Court is not persuaded by the arguments made by the United States. Mr. Jagot's testimony that inclusion of the term "Payroll Account" on the Federal Tax Lien resulted in indexing of the lien under "H" rather than "D" or "V" is credible. The term "Payroll Account" could reasonably be interpreted as a business individual or entity, resulting in indexing under the first name, while "Payroll Accountant" clearly indicates an individual, resulting in indexing under the last name. Any mistake in the indexing of the Federal Tax Lien results from an error made by the Internal Revenue Service in identifying the taxpayer's name. The Court is convinced that in this case it is not improper indexing by the Recorder of Mortgages but instead

the erroneous preparation and filing of the Federal Tax Lien by the United States that lead to the problem.

Even if a hypothetical third party purchaser had searched the records themselves and discovered the existence of the Federal Tax Lien of May 13, 1988 against "Hughes J. de la Verone II Payroll Account", this would not have put the party on notice of the existence of a tax lien against "Hugues J. de la Vergne II". The error resulting from inserting an "O" for a "G" in "de la Vergne" is material enough to result in the conclusion that "de la Verone" was not the same individual as "de la Vergne".

The errors in the Federal Tax Lien of May 13, 1988, unlike the errors in *Richter's Loan Company, Feinstein, supra* at p. 777, are significant. This case is similar to *Haye v. United States*, 461 F.Supp. 1168 (C.D.Cal.1978), in which the court held that a federal tax lien erroneously listed under "Manual de J. Castello" instead of "Manuel de J. Castillo" did not provide a third party purchaser with constructive notice of the lien.

■ The Court concludes that a reasonable search of the records of the Orleans Parish Recorder of Mortgages would not have disclosed the existence of the Federal Tax Lien of May 13, 1988. Because the existence of the Federal Tax Lien would not have been disclosed, the lien was not perfected or enforceable at the time of the commencement of the case, and is avoidable by the Trustee under the provisions of Section 545(2) of the Bankruptcy Code.

### B. ALTERNATIVE ARGUMENTS OF THE TRUSTEE

The Trustee makes three alternative arguments to his position under Section 544 and Section 545, as follows:

(1) the Federal Tax Lien is avoidable under Section 547 and 548 of the Bankruptcy Code as a preferential transfer;

---

3. The two additional federal tax liens were subsequently withdrawn by the United States as having been erroneously filed while the stay was in place. *supra,* at p. 774.

(2) the United States is an undersecured creditor, and the interest on the Federal Tax Lien stopped accumulating after commencement of the bankruptcy case; and

(3) the Trustee has effectively avoided the inscription of a judgment held by Louis V. de la Vergne against the debtor's estate by virtue of a compromise agreement entered into between the Hibernia National Bank, Louis V. de la Vergne, and the estate. As such the Trustee steps into the shoes of this avoided judgment holder in priority to any junior encumbrances, i.e. the Federal Tax Lien. Consequently, Louis de la Vergne's lien ranking is preserved for the benefit of the debtor's estate under Section 551 of the Bankruptcy Code, and prevents the United States from benefitting in rank or priority from the compromise agreement.

Having found in favor of the Trustee on his claim under Section 545(2), the Court need not consider and address the Trustee's alternative arguments.

A judgment in accordance with this opinion will be entered.

### *JUDGMENT*

On November 6, 1992, this matter came before the Court upon the complaint of Wayne C. Ducote, Trustee against the United States of America, Department of the Treasury, Internal Revenue Service. In accordance with the foregoing Memorandum Opinion,

**IT IS ORDERED, ADJUDGED AND DECREED** that judgment be entered in favor of the plaintiff, Wayne C. Ducote, Trustee and against the defendant, United States of America, Department of the Treasury, Internal Revenue Service.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the Notice of Federal Tax Lien filed against the debtor on May 16, 1988 in the amount of $49,-528.44 with the Recorder of Mortgages for the Parish of Orleans is:

a) **AVOIDED** by Wayne C. Ducote, Trustee, in accordance with the provisions of 11 U.S.C. § 545(2);

b) **CANCELLED** and **ERASED** as to all property of the debtor's bankruptcy estate; and

c) classified as a priority, unsecured claim.