**In re Cary A. REID, Jr., Debtor.**

**Cary A. REID, Jr., Plaintiff,**

**v.**

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 94–13218–A. Adv. No. 95–1034.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

March 3, 1995.

Ann M. Callaway, Law Office of Ann M. Callaway, P.C., Warrenton, VA, for plaintiff/debtor.

Margaret M. Earnest, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This adversary proceeding to determine the validity of a lien requires the Court to determine whether a notice of Federal tax lien recorded in the name of Gary A. Reid, Jr. is sufficient to create a lien against the property of Cary A. Reid, Jr., the debtor in this case. A trial of the issues raised by the complaint was held on February 28, 1995, at the conclusion of which, the court took the matter under advisement. This memorandum opinion constitutes the Court's findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

### Findings of Fact

The debtor, Cary A. Reid, Jr., filed a voluntary petition under chapter 11 of the Bankruptcy Code in this court on August 19, 1994. He remains in possession of his estate as debtor in possession. At the time he filed his petition, a "miscellaneous penalty" (apparently the result of a responsible officer assessment) in the amount of $32,933.33 had previously been assessed against him by the Internal Revenue Service for the tax year ending December 1991. On May 20, 1993, a Notice of Federal Tax Lien under Internal Revenue Laws in that amount was issued at Richmond, Virginia and was docketed on May 26, 1993 in the judgment lien docket maintained by the Clerk of Court, Fauquier County Circuit Court. For reasons that are unexplained, the Notice of Federal Tax Lien was prepared in the name of Gary A. Reid, Jr. rather than Cary A. Reid, Jr.[1] At the time the Notice of Federal Tax Lien was docketed, the debtor resided and owned real property in Fauquier County, Virginia.

The Internal Revenue Service filed a timely proof of claim on October 27, 1994 asserting a secured claim in the amount of $33,480.53 and an unsecured priority claim of $1,636.09. The debtor filed an objection to the proof of claim directed, not to the amount due, but rather to its secured status. At the hearing on the objection, the court ruled that an objection directed to the validity of a claimed lien should properly be brought as an adversary proceeding rather than as an objection to claim, and the debtor subsequently commenced the present adversary proceeding.

At the trial, the debtor presented the testimony of two experienced title examiners, Dale W. Rankin and Horace Eugene ("Jay") Herndon, who had, subsequent to the filing of the I.R.S. lien, performed separate title examinations of the debtor's property at the request of debtor's counsel.[2] Both examiners had many years of experience in examining titles and were familiar with the way judgments were indexed in the Clerk's office of the Fauquier County Circuit Court. Neither examiner found nor reported the I.R.S. lien as a lien against the debtor's real estate. The examiners testified that, for judgments subsequent to July 1, 1991, the judgment lien index in the Fauquier County Circuit Court Clerk's office is maintained both on a computer system accessible by terminals in the

---

1. There was no evidence, and no assertion, that the debtor ever used Gary as his first name.

2. Mr. Rankin's search was performed September 28, 1994 and involved a 6.0379–acre parcel vested of record in the name of Cary A. Reid, Jr. He reported only one unsatisfied judgment, which was in favor of James H. Harris & Associates.

Mr. Herndon's search was performed April 6, 1994 and involved a 13.4400–acre parcel vested of record in the name of Cary A. Reid, Jr. and Lisa Reid, husband and wife. He likewise reported only a single unsatisfied judgment, which was a tax lien in favor of the Commonwealth of Virginia.

record room and on bound hard-copy print-outs, the print-outs apparently being updated several times a week. Both examiners normally used the computer terminals, although in unusual situations they would also check the book index. Both examiners searched the judgment lien index by entering "Reid" on the computer terminal, which then displayed all the entries beginning with "Reid" in alphabetical order using a last-name-first format. At the time Mr. Rankin did his search, there were approximately 20 or 30 entries under the name "Reid." If the cursor is positioned next to a displayed name and a key pressed, additional information can be called up, including the judgment debtor's address and social security number, if available. Each examiner also explored the common spelling variants of "Reid," namely "Reed" and "Read." One also checked "Ried." Each testified that he would have checked any obvious spelling variants of "Cary," such as "Carey," "Carrie" or "Kary." Neither examiner flagged Gary A. Reid, Jr. as a possible variant of Cary A. Reid, Jr., although both entries appeared on the same computer screen and were separated by only a few entries (2 or 3 according to one examiner and 4 according to the other). Both examiners testified that they did not consider the entry for Gary A. Reid, Jr. as representing a possible lien because it was not "close enough" to Cary A. Reid, Jr. In the print-out as it then existed, the entries for Cary A. Reid, Jr. and Gary A. Reid, Jr. were on different pages.

The Government called a revenue officer, G.T. Wert, to testify that he had, in preparation for the original hearing on objection to the proof of claim, gone out to the Fauquier County Circuit Court to check how the lien was recorded. He had no prior familiarity with that particular court house but had performed record room searches for a number of years in various Virginia court houses looking for assets belonging to delinquent taxpayers and determining whether the taxpayer had sufficient equity to justify selling the property. He checked the book index rather than the computer screen and was able to find the I.R.S. lien recorded under the name Gary A. Reid, Jr. He had, however, been told prior to the search to look under both names. The judgment lien index entry for the IRS lien showed an address for Gary A. Reid, Jr. of 209 Dover Road, Warrenton, Virginia 22186. The revenue officer testified that this address had been supplied by the debtor himself in March 1992 as his address, and that in February 1995 the U.S. Postal Service verified that mail for the debtor was currently being delivered to that address.[3] None of the seven judgments the revenue officer had found docketed against "Reid, Cary," "Reid, Cary A" and "Reid, Cary A-Jr" showed a Dover Road address. In particular, a state tax lien in favor of the Commonwealth of Virginia against "Reid, Cary" docketed the same month as the I.R.S. lien against "Reid, Gary A-Jr" showed an address for the judgment debtor of Route 50, P.O. Box 286, Upperville, Virginia. At the time he checked the book index, there were five entries separating "Reid, Cary A-Jr" and "Reid, Gary A-Jr" and the entry for Gary Reid appeared on the same page as the entry for Cary Reid. He verified that the entries for Cary Reid and Gary Reid related to the same person by pulling up the social security numbers for the two entries.

### Conclusions of Law

This court has jurisdiction over this controversy under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

■ Under 26 U.S.C. § 6321 the failure, after demand, to pay any tax due the United States creates a lien in favor of the United States for the amount of the unpaid tax "upon all property and rights to property, whether real or personal, belonging to [the taxpayer]." Such lien is not effective, however, against any purchaser, holder of a security interest, mechanic's lienor, or judgment

---

3. The debtor's chapter 11 petition shows his address as P.O. Box 129, Marshall, Virginia. The discrepancy between that address and the one he supplied the I.R.S. is unexplained. In any event, no evidence was presented to rebut the Government's showing that 209 Dover Road, Warrenton, Virginia, was the debtor's address and the Court can only assume the debtor has used, and continues to use, more than one address.

lien creditor until public notice of the lien has been filed. 26 U.S.C. § 6323(a) and (f). The latter subsection requires that notice of the lien be filed in "one office within the State (or the county or other governmental subdivision), as designated by the laws of such State in which the property subject to the lien is situated"[4] and that, in the case of real estate, if under state law a deed would not be valid against a purchaser without actual notice unless indexed, and if the office where the notice of lien is filed maintains "an adequate system for the public indexing of Federal tax liens," then the notice of lien "shall not be treated as meeting the filing requirements ... unless the fact of filing is entered and recorded in the index ... *in such a manner that a reasonable inspection of the index will reveal the existence of the lien.*" 26 U.S.C. § 6323(f)(4) (emphasis added).

Under § 1107(a) of the Bankruptcy Code, a debtor in possession in a case under chapter 11 has the powers of a trustee. These include the power to avoid the fixing of statutory liens "to the extent that such lien ... is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists." Section 545(2), Bankruptcy Code. The issue, then, is whether the notice and indexing of the Federal tax lien in the name of "Gary A. Reid, Jr." would, on "reasonable inspection" of the judgment lien index, "reveal" the lien so as to be effective against a hypothetical bona fide purchaser.

■ In *Hudgins v. Internal Revenue Service (In re Hudgins),* 967 F.2d 973 (4th Cir.1992), the Court of Appeals rejected a "bright line" test, under which an I.R.S. lien would have been perfected only if recorded in the exact name of the taxpayer, in favor of a "constructive notice" approach:

> It is hornbook law that every purchaser is expected to search for recorded encumbrances on the property; that is, he is held to have constructive knowledge of recorded liens. Thus, the validity of a tax lien in

bankruptcy must depend on the constructive notice that the lien would give the purchaser. It reasonably follows that when there is a mistake in the indexing of a tax lien, as here, the validity of the lien in bankruptcy depends on whether it would nevertheless give a purchaser constructive notice.

*Id.* at 976. In *Hudgins* the Court of Appeals held that a Federal tax lien recorded against "Hudgins Masonry, Inc."—a corporation whose existence had been terminated for failure to pay certain fees—constituted constructive notice as to the business assets of Michael Hudgins, who continued to do business (and to file Federal tax returns) under the name of "Hudgins Masonry, Inc.," but not as to his non-business assets. As the Court of Appeals observed:

> A purchaser of Hudgins' business assets would certainly have known that Hudgins traded as "Hudgins Masonry, Inc.," and, finding a lien against "Hudgins Masonry, Inc.," would have taken further steps to determine if the assets were encumbered.

*Id.* at 977. With respect to the non-business assets, however, the Court of Appeals reasoned that "individuals are shielded from corporate liability" and that, therefore,

> even if a purchaser knew that Michael Hudgins the individual owned Hudgins Masonry, Inc., that purchaser would reasonably believe that any liens against the corporation would not be valid as against Hudgins' nonbusiness assets.

*Id.* See, *Ducote v. United States (In re de la Vergne),* 156 B.R. 773 (Bankr.E.D.La.1993) (Notice of Federal tax lien recorded in name of "Hughes J. de la Verone II Payroll Account" not sufficient to perfect lien against "Hughes J. de la Vergne II"). Just how far the name under which the lien is recorded can vary from the taxpayer's true name before the notice of lien is ineffective depends on all the circumstances, but it is clear than even fairly significant misspellings may nevertheless be close enough "to alert one of the government's claim." *Hudgins, supra,* at

---

4. Under § 55–1421, Code of Va. (1950), the Clerk's office of the circuit court for the city or county where the real estate is located or where

the taxpayer resides is the designated office for filing notices of Federal tax liens.

976. See, e.g., *United States v. Feinstein,* 717 F.Supp. 1552 (S.D.Fla.1989) (misspelling of "Tarragon" as "Taragon"); *Richter's Loan Co. v. United States,* 235 F.2d 753 (5th Cir. 1956) ("Freidlander" instead of "Friedlander"). *But see Continental Investments v. United States,* 142 F.Supp. 542 (W.D.Tenn. 1953) (tax lien in the name of "W.B. Clark, Sr." not constructive notice of lien against "W.R. Clark, Sr.").

In the case before the court, the number of entries indexed under the debtor's last name are relatively few, and no more than five entries separate the correct spelling and the incorrect spelling. On the computer terminal, both the correct and incorrect forms of the name appear on the same screen. The difference between the two spellings involves only one letter in the first name; otherwise the two forms are identical, including the middle initial and the generation suffix. On the other hand, "Gary" is not only spelled differently from "Cary," it is pronounced differently as well. While the address shown for "Gary" is (presumably) an actual address of the debtor, it is distinctly different from any of the addresses shown on the judgment lien index for "Cary Reid," "Cary A. Reid" and "Cary A. Reid, Jr." Moreover, two experienced title examiners who routinely search titles in the jurisdiction involved did not report the lien recorded against "Gary A. Reid, Jr." as a title objection with respect to the property of "Cary A. Reid, Jr." Although it is true that "what title companies in fact do is not itself decisive of the question of reasonableness" and that the issue of what is a "reasonable inspection" is a mixed question of fact and law to be decided by the court, *de la Vergne, supra,* at 776, nevertheless the result of actual title searches by experienced local examiners is powerful evidence on the issue of what a reasonable inspection would disclose. Finally, this is not a case, as in *Hudgins,* where the notice of lien was not filed under the debtor's name because the debtor himself continued to file his business tax returns using a corporate name he was no longer entitled to use and, in effect, misled the Government. Here, there is no evidence that the debtor ever used or filed tax returns in the name of "Gary A. Reid, Jr."

In short, the issue is a close one, but on balance I find that the indexing of the lien in the name of Gary A. Reid, Jr. would not, on reasonable inspection of the judgment lien index, provide constructive notice of a tax lien against the debtor in this case, Cary A. Reid. Accordingly, an order will be entered avoiding the claimed lien.