**In the Matter of SPEARING TOOL AND MANUFACTURING CO., INC., Debtor.**

**Crestmark Bank and Crestmark Financial Corporation, Plaintiffs,**

v.

**United States of America, Defendant.**

No. 03–72070.
Bankruptcy No. 02–49144–swr.
Adversary No. 02–5201.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 5, 2003.

Steven P. Ross, William R. Huffman, Shaheen, Jacobs, Detroit, MI, for Plaintiffs.

Thomas P. Cole, Department of Justice, Tax Division, Washington, DC, for Defendant.

## ORDER REVERSING THE OPINION AND ORDER OF THE BANK-RUPTCY COURT

EDMUNDS, District Judge.

Plaintiffs in this adversary action, Crestmark Banks and Crestmark Financial Corp. (collectively, "Crestmark"), appeal a Bankruptcy Court order denying their motion for summary judgment and granting summary judgment *sua sponte* to the Internal Revenue Service. The Bankruptcy Court ruled that federal tax liens had priority over Crestmark's, even though the federal liens did not identify the debtor by its name as registered with the State of Michigan. For the reasons fully explained below, the Court REVERSES the Bankruptcy Court's order.

### I. Background

In April of 1998, the debtor, Spearing Tool and Manufacturing Co., and Crestmark Bank entered into a lending agreement. The debtor granted Crestmark Bank a security interest in all of its assets, including accounts receivables. Crestmark Bank perfected its security interest by filing a UCC financing statement.

In April of 2001, Crestmark Financial Corp. ("CFC") entered into a secured financing arrangement with the debtor, whereby CFC agreed to purchase accounts receivables from the debtor. The debtor granted CFC a security agreement in all of its assets, including accounts receivables. On April 21, 2001, CFC perfected its security interest by filing a UCC financing statement.

On October 15, 2001, the IRS filed two notices of federal tax lien with the Michi-

gan Secretary of State for a total amount of $202,770.11. This appeal centers on the name of the debtor the IRS used on its tax liens. The IRS filed the liens under the name "Spearing Tool & MFG Company, Inc." The debtor's exact registered name, however, is "Spearing Tool and Manufacturing Co."

CFC submitted periodic lien search requests for the debtor to the State of Michigan, using the debtors exact registered name. The results did not disclose the IRS liens. Relying on the absence of liens in the search results, CFC made funding advances to the debtor between October 15, 2001, and April 6, 2002.

On April 16, 2002, the debtor filed for bankruptcy relief under chapter 11. On April 18, 2002, the Bankruptcy Court entered a Consent Order Approving Factoring of Accounts Receivable Under Factoring Agreement, Use of Cash Collateral, and Granting Adequate Protection. The order provided for a $200,000 reserve account to be managed by Crestmark and funded by pre-petition accounts receivable collections. The amount currently in the reserve account, approximately $153,058.33, is the amount now in controversy. The Bankruptcy Court's order reserved for future determination the respective rights of Crestmark and the IRS in the account balance.

## II. Standard of Review

This Court has jurisdiction to hear appeals from final judgments, orders and decrees issued by bankruptcy judges in cases and proceedings under the Bankruptcy Code. *See* 28 U.S.C. § 158(a)(1). Findings of fact are reviewed under the clearly erroneous standard. *See* Fed. R. Bankr.P. 8013; Fed.R.Civ.P. 52. Conclusions of law are reviewed *de novo*. *See In re Caldwell*, 851 F.2d 852, 857 (6th Cir.

1988); *Corzin v. Fordu (In re Fordu)*, 209 B.R. 854, 857 (6th Cir. BAP 1997).

## III. Analysis

■ The issue on summary judgment was whether the IRS's liens had priority over CFC's because under state law, liens must be filed under the debtor's actual registered name. The Bankruptcy Court decided that the IRS's liens were valid according to federal law, and that they have priority over CFC's liens granted after the IRS filed its liens.

■ Federal law controls the priority of tax liens versus Crestmark's interest. *See Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *United States v. Bank of Celina*, 721 F.2d 163, 166 (6th Cir.1983).

### A. Federal Liens' Compliance with State Requirements

Crestmark argues that the IRS liens do not have priority because they do not comply with Michigan state law governing the name of the debtor on a financing statement. Michigan statutes provide:

§ 440.9503. Name of debtor and secured party

Sec. 9503. (1) A financing statement sufficiently provides the name of the debtor if it meets all of the following that apply to the debtor:

(a) If the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized.

§ 440.9506. Effect of errors or omissions

Sec. 9506. (1) A financing statement substantially satisfying the requirements of this part is effective, even if it has

minor errors or omissions, unless the errors or omissions make the financing statement obviously misleading.

(2) Except as otherwise provided in subsection (3), a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 9503(1) is seriously misleading.

(3) If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 9503(1), the name provided does not make the financing statement seriously misleading.

Mich. Comp. Laws Ann. §§ 440.9503, 440.9506 (West 2003 Supp.).

The Bankruptcy Court rejected Crestmark's position that because the IRS liens did not comply with Michigan law, the liens should not be granted priority. The court relied on the Supreme Court's holding in *United States v. Union Cent. Life Ins. Co.*, 368 U.S. 291, 294, 82 S.Ct. 349, 7 L.Ed.2d 294 (1961):

While § 3672(a)(1) [the precursor to § 6323] unquestionably requires notice of a federal lien to be filed in a state office when the State authoritatively designates an office for that purpose, the section does not purport to permit the State to prescribe the form or contents of that notice. Since such an authorization might well result in radically differing forms of federal tax notices for the various States, it would run counter to the principle of uniformity which has long been the accepted practice in the field of federal taxation.

Crestmark argues that *Union Central* is not dispositive of the issue in this case because *Union Central* concerned the design of the form itself (specifically, if certain information needed to be included on the IRS form), but here, the design of the form is not at issue; rather, the manner in which the IRS completed the form is the issue. Not only was the necessity of including specific property descriptions the issue in *Union Central,* but the conflict among two circuit court cases that *Union Central* sought to resolve also decided whether IRS liens were required by state law to recite specific property descriptions when federal law imposed no such requirement. *See Youngblood v. United States,* 141 F.2d 912 (6th Cir.1944); *United States v. Rasmuson,* 253 F.2d 944 (8th Cir.1958).

Crestmark contends that this distinction is important because *Union Central* focused on the impracticality and lack of consistency if the IRS was required to comply with each states' different requirements for liens, but in this case that is simply not an issue: filling out a form correctly does not implicate the same concerns as creating a different form for different states.

■ Crestmark reads *Union Central's* holding too narrowly. *Union Central* expressly prevents states from prescribing the content of IRS liens, not just the form. 368 U.S. at 294, 82 S.Ct. 349. Moreover, while some of the reasoning in support of the holding does not seem applicable to this case, other parts of the Court's reasoning support the decision to apply *Union Central* to this case. The Court cited the tax code, amended in 1954, which stated that IRS liens were valid if filed on the IRS form "notwithstanding any law of the State or Territory regarding the form or content of a notice of lien." The Court used this amendment to support the conclusion that Congress did not intend for state laws to control the form or content of IRS lien forms. The current tax code provides: "The form and content of the notice referred to in subsection (a) shall be pre-

scribed by the Secretary. Such notice shall be valid notwithstanding any other provision of law regarding the form or content of a notice or lien." 26 U.S.C. § 6323(f)(3). The current statute is even broader than the one relied on by *Union Central,* but its message is the same: state law will not invalidate an IRS lien because of its form.

The issue thus becomes whether the lien in this case complied with federal law. The government concedes that the most applicable test is that of reasonableness. In cases where the government has made errors in the debtor's name on the lien, courts inquire whether a reasonable search of the index would have disclosed the error-laden federal tax lien. If such a search would have disclosed the existence of the lien then the notice of federal lien meets the statutory requirements of 26 U.S.C. § 6323. The Bankruptcy Court disagreed, finding that cases involving errors in the legal name of the debtor were not controlling because here, there was no error—the IRS used a version of the debtor's name, just not the version registered with the State of Michigan. This Court concludes that the distinction between a typographical error and an error in choosing the version of the name is meaningless. The source of the error (sloppiness vs. good faith belief that the recited name was correct) is not relevant to whether a subsequent searcher would discover the lien.

Several courts have applied the reasonableness test. For example, in *Richter's Loan Co. v. United States,* 235 F.2d 753 (5th Cir.1956), the notice of tax lien was filed under the taxpayers' name of "Freidlander," when the taxpayers' actual name was "Friedlander." An incorrect address was also listed below the taxpayers' names. The Fifth Circuit rejected the argument that the misspelled name was insufficient to put persons on notice that Joseph Freidlander had a lien against him by concluding that a slight misspelling could not mislead searchers of the tax liens that there was a notice of lien against the taxpayer. *Id.* at 755.

In *United States v. Sirico,* 247 F.Supp. 421 (S.D.N.Y.1965), a mortgagee claimed its lien was superior to federal tax lien filed three years earlier because the tax lien only referred to the taxpayer by her first initial, "A. Sirico," instead of her full name, "Assunta Sirico." The court concluded:

> The mere fact that a full name is not given or that there is an addition, omission or substitution of letters in a name, or even errors, does not, in and of itself, invalidate the notice. The essential purpose of the filing of the lien is to give constructive notice of its existence. The test is not absolute perfection in compliance with the statutory requirement for filing the tax lien, but whether there is substantial compliance sufficient to give constructive notice and to alert one of the government's claim.

*Id.* at 422.

Courts applying the reasonableness test necessarily consider the recording method employed by the state or county. In *Hudgins v. I.R.S.,* 967 F.2d 973 (4th Cir.1992), the government filed a tax lien under the name "Hudgins Masonry, Inc.," even though the taxpayer, Michael Steven Hudgins, had failed to pay his corporate charter fees and the Commonwealth of Virginia had terminated his corporate charter. Hudgins continued to file federal tax returns under the corporate name. *Id.* at 975. The issue before the court was whether the federal tax lien filed under the corporate name was sufficient to give notice of the lien to a buyer of the taxpayer's personal property. *Id.* The court first decided that in the bankruptcy context, courts should look to whether the govern-

ment's notice of tax lien provided constructive notice to the bona fide purchaser, and refused to adopt a bright-line test, adopted by only a few other courts, which requires that tax liens provide the taxpayer's name correctly or it is not granted priority. *Id.* at 976.

The court went on to agree with the district court's conclusion that the tax lien filed under the corporate name did provide constructive notice to buyers of the taxpayer's business-related assets because the county recording system listed liens against individuals and corporations in the same index, and all of the listings under "Hudgins" were on the same page. *Id.* at 977. As for the taxpayer's personal assets, the court reasoned that even if a searcher noticed the lien for his corporation, that purchaser would have reasonably assumed that the lien did not extend to personal assets because personal assets are generally shielded from corporate liability. *Id.* Thus, the Fourth Circuit focused on the particular filing system employed by the county and the method a searcher used when searching those records to determine whether a searcher should have had constructive notice of the mistakenly filed tax lien. *See also Whiting–Turner/A.L. Johnson v. P.D.H. Development, Inc.,* 184 F.Supp.2d 1368 (M.D.Ga.2000) (concluding that a tax lien for "PD HILL DEVELOPMENT INC," which incorrectly identified the taxpayer "PDH DEVELOPMENT INC," would have put a reasonable searcher on notice of the lien because the page from the county index lien showed that the erroneous federal lien appeared directly above a correctly filed lien under the taxpayer's correct name, and because the index was organized alphabetically, the two names are so similar, and the close proximity of the two names on the index page, a reasonable searcher would have noticed the federal tax lien and investigated further).

Turning to the present case, the government contends that the tax lien provided constructive notice to Crestmark because Crestmark knew that the debtor sometimes used the name as recited on the federal tax lien, knew that the debtor was liable for unpaid taxes, and also had copies of the debtor's tax returns wherein the debtor used the version of its name recited on the federal tax lien. (Adversary Proceeding Docket Item No. 21, Cole Decl. Ex.'s 3 and 4.)

Crestmark responds that because of the state lien recording system's search logic, and the revised UCC which requires strict compliance regarding the correct naming of debtors, it would not have been reasonable for the banks to search under variations of the debtor's name nor would any reasonable search have produced evidence of the tax lien. If the Court agrees with the government, the burden will be on future searchers to conduct separate searches under every version of a potential debtor's name of which it is aware or should be aware. While the new version of the UCC, i.e. state law, does not control the content of federal tax liens, it does shed light on what is reasonable behavior for searchers in today's environment. Crestmark points out that the a search of the Michigan Secretary of State's record for liens on personal property only disclose records that match exactly with the name designated in the request. The Secretary of State will not search variants of the name (as it did under the former version of Article 9 of the UCC), and the public has no independent access to search the index.[1] It is not reasonable for searchers to conduct one search for liens that might in-

---

1. The system is different for liens on real property, which are maintained in a separate filing system, and is accessible to the public to search the records directly.

clude federal tax liens, and require them to conduct separate, multiple searches under the debtor's multiple possible names for a possible federal tax lien. The burden on the government to include corporate taxpayers' registered names seems slight by comparison.

The government responds that a ruling in its favor will not add a burden to lenders because most secured lenders require copies of borrower's tax returns and also require the borrower to execute documents allowing the creditor to contact the IRS to review the borrower's filing and payment history. While this may be true (no evidence was presented to support this statement), it seems only true at the point of the initial loan application. In this case, the problem arose when the IRS placed its lien on the debtor's property after the initial loans were made, but prior to subsequent loans and prior to Crestmark's routine checks of its borrower's records at the Secretary of State. While it might be usual practice for lenders to contact the IRS when initially making a loan, not even the government contends that lenders routinely contact the IRS to update their records before extending additional credit to current borrowers. Indeed, that would seem to defeat the purpose of the current system, which requires the IRS to file notice of liens in the same state office as other lien holders, allowing lenders to check one central location for IRS liens as well as other secured creditors.

The issue is essentially who should bear the burden of recording systems which use rigid computerized search logic. Gone are the days of large alphabetical books, where a reasonable searcher would likely find a misspelled (or mistakenly abbreviated) name because it would appear in close proximity to where a lien with a correctly spelled name would have appeared. Fairness to third parties dictates that in cases like this, where a reasonable searcher would not have notice of the federal tax lien, the IRS's liens should not have priority over other lenders.

## IV. Conclusion

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders as follows:

The Bankruptcy Court's Order granting the IRS summary judgment is REVERSED. This adversary case is remanded to the Bankruptcy Court for proceedings consistent with this opinion.