# UNITED STATES *v.* UNION CENTRAL LIFE INSURANCE CO.

No. 52.   Argued November 7, 1961.—Decided December 18, 1961.

*I. Henry Kutz* argued the cause for the United States. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Oberdorfer* and *Fred E. Youngman.*

*H. William Butler* argued the cause and filed briefs for respondent.

Opinion of the Court by MR. JUSTICE BLACK, announced by MR. JUSTICE FRANKFURTER.

Robert G. Peters, Jr., and his wife, of Oakland County, Michigan, failed to pay their 1952 federal income taxes. In January 1954 an assessment for this delinquency was filed in the Internal Revenue Collector's Office at Detroit, Michigan, at which time a lien arose "in favor of the United States upon all property" of the two delinquent

taxpayers.[1] Some 10 months after the Government's tax lien arose, Mr. and Mrs. Peters executed a mortgage on real property they owned in Oakland County to secure an indebtedness to the respondent Union Central Life Insurance Company. They defaulted in payment of the mortgage, and Union Central filed this action to foreclose in the Circuit Court of Oakland County, joining the United States as a party defendant because of its asserted lien.

The company claimed priority for its mortgage over the earlier created federal lien because no notice of the federal lien had been filed with the register of deeds in Oakland County as then required by Michigan law.[2] For this alleged priority the company relied on § 3672 (a)(1) of the 1939 Internal Revenue Code, as amended, providing that a federal tax lien shall not be valid as against any mortgagee until notice has been filed "In the office in which the filing of such notice is authorized by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law authorized the filing of such notice in an office within the State or Territory." The Government, however, claimed that Michigan had not "authorized" filing within the meaning of the statute and that the case should be governed by § 3672 (a)(2) which provides that "whenever the State . . . has not by law authorized the filing of such notice in an office within the State," the notice may be filed in "the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated." Since the federal lien had been filed in the District Court months before the mortgage was executed and filed in the county register of deeds'

---

[1] Sections 3670 and 3671 of the Internal Revenue Code of 1939, in effect at that time.

[2] Act 104, Public Acts of Michigan of 1923, repealed April 13, 1956, by Act 107, Public Acts of Michigan of 1956.

office, the Government claimed that its lien had priority. The Government's contention that Michigan had not "authorized" a state office for filing the federal tax notice was based on the fact that the Michigan law purporting to authorize such filing expressly required that a federal tax lien notice contain "a description of the land upon which a lien is claimed," even though the form long used for filing federal tax lien notices in the District Courts throughout the United States does not contain a description of any particular property upon which the lien is asserted. In support of its contention the Government pointed to the fact that in 1953 the Michigan Attorney General ruled that federal tax lien notices not containing such a description are not entitled to recordation, and it is stipulated that from the time of that ruling, up to 1956,[3] "it was the policy of the office of the Register of Deeds for said County of Oakland not to accept for recording notices of Federal tax liens which did not contain a legal description of any land."

Because the United States had not filed a notice complying with the Michigan law, the Michigan Circuit and Supreme Courts held the federal lien to be subordinate to the mortgage, 361 Mich. 283, 105 N. W. 2d 196. While this holding is in accord with *Youngblood* v. *United States,* 141 F. 2d 912 (C. A. 6th Cir.), it conflicts with *United States* v. *Rasmuson,* 253 F. 2d 944 (C. A. 8th Cir.). In order to settle this conflict and because of the importance of the question in the administration of the revenue laws, we granted certiorari. 365 U. S. 858.

The Michigan requirement that notice of the federal tax lien be filed in Michigan is, of course, not controlling unless Congress has made it so, for the subject of federal taxes, including "remedies for their collection, has always been conceded to be independent of the legislative action

---

[3] Act 104 was repealed April 13, 1956.

of the States." *United States* v. *Snyder,* 149 U. S. 210, 214.   While § 3672 (a)(1) unquestionably requires notice of a federal lien to be filed in a state office when the State authoritatively designates an office for that purpose, the section does not purport to permit the State to prescribe the form or the contents of that notice.   Since such an authorization might well result in radically differing forms of federal tax notices for the various States, it would run counter to the principle of uniformity which has long been the accepted practice in the field of federal taxation. Moreover, a required compliance with Michigan law would mean that the federal tax lien would be superior to all those entitled to notice only as to the property described in the notice even though § 3670 broadly creates a lien "upon all property and rights to property, whether real or personal, belonging to" a taxpayer.   This language has been held to include in the lien all property owned by the delinquent taxpayer both at the time the lien arises and thereafter until it is paid.[4]   It seems obvious that this expansive protection for the Government would be greatly reduced if to enforce it government agents were compelled to keep aware at all times of all property coming into the hands of its tax delinquents.   Imposition of such a task by the Michigan law could seriously cripple the Government in the collection of its taxes, and to attribute to Congress a purpose so to weaken the tax liens it has created would require very clear language.   The history of § 3672 belies any such congressional purpose.

In 1893 this Court decided in *United States* v. *Snyder,* 149 U. S. 210, that the federal tax lien could be enforced against bona fide purchasers who had no notice of the lien, despite a state law attempting to defeat the lien unless it has been recorded.   In order to grant relief from the *Snyder* rule, Congress in 1913 passed an Act requiring,

---

[4] *Glass City Bank* v. *United States,* 326 U. S. 265.

much as the provision here in question did, that the tax liens should not be "valid as against any mortgagee, purchaser, or judgment creditor" until notice was filed with the clerk of an appropriate District Court or, whenever a State authorized such filing, in the office of a county recorder of deeds.[5]  This statute was amended in 1928 by adding that the lien would not be valid until notice was filed *"in accordance with the law of the State or Territory* in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice . . . ."[6]  (Emphasis supplied.)  Following this in *United States* v. *Maniaci,* 36 F. Supp. 293, aff'd, 116 F. 2d 935, both a United States District Court and a Court of Appeals refused to enforce a federal tax lien on Michigan property because the notice of lien, although filed both in a District Court and in the office of the proper Michigan register of deeds, did not contain the description of the property required by Michigan law.   In this holding emphasis was placed on the clause added in 1928, requiring notice to be filed "in accordance with the law of the State or Territory in which the property subject to the lien is situated . . . ."

Less than two years after the *Maniaci* holding Congress again amended the lien notice provisions, struck out "in accordance with the law of the State or Territory" and substituted the language in the section here controlling that notice was not valid until filed "In the office in which the filing of such notice is authorized by the law of the State or Territory."[7]  The reports of the House and Senate Committees reporting this amendment point strongly to a purpose to get away from the ruling in the *Maniaci* case and make it clear that, while notice of a

[5] 37 Stat. 1016.

[6] 45 Stat. 876.

[7] 56 Stat. 957, § 3672 (a)(1) of the Internal Revenue Code of 1939, as amended.

federal lien must be filed in a state office where authorized by a State, the notice is sufficient if given in the form long used by the Department "without regard to other general requirements with respect to recording prescribed by the law of such State or Territory."[8] The Department never accepted the *Maniaci* case and its practice has been to use forms which do not contain a particular description of any property owned by a delinquent taxpayer. The notice provisions were once more amended in the 1954 Code, this time providing that the notice shall be valid if in the Department form "notwithstanding any law of the State or Territory regarding the form or content of a notice of lien."[9] The House Report stated that this amendment was merely "declaratory of the existing procedure and in accordance with the long-continued practice of the Treasury Department."[10]

The Michigan law authorizing filing only if a description of the property was given placed obstacles to the enforcement of federal tax liens that Congress had not permitted, and consequently no state office was "authorized" for filing within the meaning of the federal statute. It was therefore error for the Michigan courts to fail to give priority to the Government's lien here, notice of which had been filed in the District Court in accordance with federal law.

The judgment of the Michigan Supreme Court is reversed and the cause is remanded to that court for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS dissents.

---

[8] H. R. Rep. No. 2333, 77th Cong., 2d Sess. 173. See also S. Rep. No. 1631, 77th Cong., 2d Sess. 248.

[9] Section 6323 (b) of the Internal Revenue Code of 1954.

[10] H. R. Rep. No. 1337, 83d Cong., 2d Sess. A406–A407.