**Mary M. SCHNARR and Paul B. Peeler, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 91–1895 C (5).

United States District Court, E.D. Missouri, E.D.

May 29, 1992.

Dennis J. Curland, Briegel Baylard Patane & Arand, Chesterfield, Mo., for plaintiffs.

Henry J. Fredericks, Asst. U.S. Atty., St. Louis, Mo., Jay P. Golder, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND OPINION

LIMBAUGH, District Judge.

This is an action for a wrongful levy, pursuant to Section 7426(b) of the Internal Revenue Code of 1986, as amended (26 U.S.C.) (hereinafter the "Code") and 28 U.S.C. Section 1346(e). The plaintiffs seek (1) an injunction prohibiting the IRS from selling at public auction, a truck used by the taxpayer, Duncan Contractors, Inc. ("Duncan"), (2) a determination of the priority of the federal tax liens of the United States vis-a-vis the plaintiffs' security interest in the truck, and (3) damages as set forth in Section 7426(b)(2)(c) of the Code.

The IRS seized the truck and directed it to be offered for sale at a public auction on September 16, 1991. The proceeds from the sale were to be used to pay taxes due from Duncan, the owner of the truck. In response to plaintiffs' complaint, this Court issued a temporary restraining order on September 16th which prohibited the IRS from selling, disposing, or otherwise releasing the truck. This Court also set this matter for a preliminary injunction hearing. The Government filed a motion to dissolve the temporary restraining order and dismiss the complaint for injunctive relief. On October 10, 1991, this Court held a preliminary injunction hearing. Having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulation of the parties, and being fully advised in the premises, this court hereby makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

On June 10, 1988, Duncan executed a security agreement and promissory note with Mark Twain Bank for a loan to purchase two Ford trucks described as:

1988 Ford F-250 truck, VIN # 1FTEF26HXJNB40851 (No. 1)

1988 Ford F-250 truck, VIN # 1FTEF26H6JNB35601 (No. 2)

The two Ford trucks secured the loan. The existing certificates of title, and an application for a certificate of title stating Mark Twain Bank as lienholder, the date of the Security Agreement, and a certificate of ownership fee were delivered to the Director of Revenue, State of Missouri. The current balance of the loan with respect to both Ford trucks is $2,175.27, plus accrued interest. On or about April 11, 1989, Duncan executed a second security agreement in favor of the bank. The security agreement described, *inter alia*, as the collateral all "equipment of Debtor, ... now owned ... including ... all present ... vehicles, etc." On or about October 11, 1989, Duncan executed a promissory note in favor of Mark Twain Bank for $25,000. This note stated that it was secured by the April 11, 1989 security agreement. Duncan executed another promissory note in favor of Mark Twain Bank for $23,440.31 on or about November 11, 1990. This renewed the promissory note of October 11, 1989. The current balance of this note is $23,488.58, plus accrued interest. However, Mark Twain Bank did not send the Ford truck No. 1 certificate of title to the Missouri Director of Revenue in order to give notice of the April 11, 1989 security interest. Therefore, the certificate of title for Ford truck No. 1 does not indicate Mark Twain Bank's security interest dated April 11, 1989.

The plaintiffs were personal friends of the taxpayer, and agreed to assume the taxpayer's liabilities owed to the bank. On July 23, 1991, Mark Twain Bank assigned its interest in Ford truck No. 1 to the plaintiffs in exchange for $25,663.85. This

total amount included the $2,175.27 balance owed on the two trucks and the amount of the October 11, 1989, promissory note owed by Duncan to the bank (which had a current value of $23,488.58). The IRS served a notice of levy on Duncan for unpaid federal employment taxes in the amount of $86,698.94, plus interest on August 9, 1991. On September 16, 1991 the IRS seized the Ford truck No. 1, to sell at public auction. The proceeds from the auction sale would be applied to Duncan's unpaid taxes. On September 16, 1991 the plaintiffs requested and received issuance of a temporary restraining order prohibiting the sale, disposal, or release of the truck.

The taxpayer, Duncan, has an outstanding federal tax liability for assessed employment taxes in the amount of $86,-698.94, plus interest. The IRS filed notices of federal tax liens against Duncan. The first notice was filed August 10, 1990, and this filing date is the point of time used to measure the priority of the Government's tax lien over holders of other security interests or liens. The United States concedes that Mark Twain Bank holds a security interest in the amount of $2,175.27, plus interest. This security interest relates to the promissory note and security agreement executed by Duncan, with respect to Mark Twain Bank, to purchase the seized truck. The lien corresponding to the $2,175.27 was issued on June 10, 1988 and has priority over the government's subsequent tax lien.

## CONCLUSIONS OF LAW

The plaintiffs claim a priority security interest in the Ford truck under Section 6323 of the Code, even though this interest was not recorded. Furthermore, the plaintiffs claim that the levy was wrongful because their rights in the property would be irreparably harmed under Code Section 7426 if the truck is not returned forthwith.

The government contends that the IRS levy was not wrongful. The United States claims that the plaintiffs' interest in the truck is only $2,175.27, plus interest, and that the taxpayer, Duncan, has the remaining interest in the property. This property is subject to the attachment of federal tax liens.

Section 7426 of the Code provides that when a tax levy has been made on property for the collection of the assessed liability of a taxpayer, any other person who claims (1) an interest in such a property and (2) that such property was wrongfully levied on, may bring a civil action against the United States in the appropriate federal district court. The purpose of this provision, as explained by the House Ways and Means Committee, is to permit a third person who claims that the IRS tax collection activities adversely effected his property rights, to bring an action against the government in order to resolve the question of ownership of the property seized. H.R.Rep. No. 1884, 89th Cong., 2d Sess. 27–28, *reprinted in* 1966 U.S.CODE CONG. & ADMIN.NEWS pp. 3722, 3750.

■ A claimant must satisfy two requirements in order to successfully maintain an action for wrongful levy. First, the moving party must show that he has an interest or lien on the property in question. *Valley Finance, Inc. v. United States,* 629 F.2d 162, 168 (D.C.Cir.1980) ("only persons claiming specific, possessory rights are entitled to seek judicial review"), *cert. denied sub. nom. Pacific Development Inc. v. United States,* 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). *See also Flores v. United States,* 551 F.2d 1169, 1171 (9th Cir.1977). Second, the claimant must show that the property was wrongfully levied upon. A levy is wrongful where the money or property levied upon "does not in whole or in part belong to the taxpayer against whom the levy originated." *Arth v. United States,* 735 F.2d 1190, 1193 (9th Cir.1984). As the Eighth Circuit Court of Appeals stated, the term "wrongfully levied upon" contemplated by Section 7426(a)(1) means "seized wrongfully in relation to the third person who is bringing the suit and not merely wrongful in relation to a taxpayer who may suffer from the collateral effects to the seizure." *Rosenblum v. United States,* 549 F.2d 1140, 1145 (8th Cir.1977).

■ As a general rule, in a wrongful levy suit "the moving party retains the ultimate burden of proof in its attempt to persuade the District Court that the government action should be overturned." *Valley Finance*, at 171 n. 19. The claimant must show that the levy filed against the property in his name or possession was wrongful. *Arth*, at 1193. The Government, with greater access to the facts, bears the burden of persuasion with respect to establishing a nexus between the delinquent taxpayer and the subject property sufficient to support the levy.

■ In Section 6321, the Code gives the Government a lien for unpaid taxes on all property and rights to property of any taxpayer who does not pay his taxes after demand. This lien reaches all of the taxpayer's property interests. *United States v. National Bank of Commerce*, 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985). Code Section 6322 states that the lien arises at the time the tax assessment is made, and it continues until the tax liability is satisfied or becomes unenforceable because of an extensive time lapse. Code Section 6331 gives the IRS the power to collect unpaid taxes by an administrative levy upon all property and rights to property belonging to the taxpayer or on which there is a federal tax lien.

■ A federal tax lien's priority is governed by federal law. *United States v. Union Central Life Insurance Co.*, 368 U.S. 291, 293–295, 82 S.Ct. 349, 351–52, 7 L.Ed.2d 294 (1961) (federal tax lien not subject to state filing requirements even if it is against a good-faith purchaser). *See also, United States v. Rodgers*, 461 U.S. 677, 683, 103 S.Ct. 2132, 2137, 76 L.Ed.2d 236 (1983). A federal tax lien arises on the date of assessment, however, notice of the lien takes place on the date it is filed or recorded. Section 6323(a) states that the filing date is the point of time used to measure the priority of the Government's tax lien over holders of other security interests or liens.

■ In this case, the issue is the extent to which Mark Twain Bank (and subsequently the plaintiffs) held a security interest[1] in the seized truck under Section 6323 of the Code. Section 6323 states that local law (state law) determines when the property interest is protected under a subsequent judgment lien. In Missouri, the Uniform Commercial Code generally covers the perfection and priority of security interests in property. However, a separate Missouri statute governs the perfection of liens on motor vehicles and trailers. MO. REV.STAT. § 301.600(2) (1990) determines whether Mark Twain Bank's interest is protected against a subsequent judgment lien creditor. Section 301.600(2) states in pertinent part:

> Liens may secure future advances. The future advances may be evidenced by one or more notes or other documents evidencing indebtedness and shall not be required to be executed or delivered prior to the date of the lien securing them. The fact that a lien may secure future advances shall be clearly stated on the security agreement and noted as "subject to future advances" in the second lienholder's portion of the title application and noted on the certificate of ownership if the motor vehicle is subject to only one lien.

> "This provision ... controls the method of perfecting liens and encumbrances on motor vehicles in Missouri." *Loewen–America, Inc. v. Advance Distributing Co., Inc.*, 705 F.2d 311, 314 (8th Cir. 1983).

The United States concedes that Mark Twain Bank holds a security interest in the amount of $2,175.27, plus interest. This amount relates to the June 10, 1988 promissory note and security agreement that Duncan executed to purchase the seized

---

**1.** Section 6323(h)(1) of the Code defines "security interest". A security interest is "any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability". The interest exists when (1) the property relat-ing to the security interest is in existence, and the interest has become protected under local law against a subsequent judgement lien from an unsecured obligation, and (2) the holder of the security has parted with money or money's worth.

truck. The bank properly protected its interest under Missouri law. However, since the truck is valued at approximately $8,000.00, the taxpayer has remaining equity in the property which is properly subject to the attachment of a federal tax lien.

The plaintiffs contend that they hold an additional security interest (beyond $2,175.27) in the seized truck to the extent of $25,000. The $25,000 security interest corresponds to the October 11, 1989 promissory note executed by Duncan in favor of Mark Twain Bank. The collateral for this security agreement is all equipment and vehicles that Duncan owned or acquired.

The plaintiffs concede that Mark Twain Bank did not send the certificate of title for the seized truck that reflected the April 11, 1989 security agreement to the Missouri Director of Revenue as notice of its security interest. Furthermore, there was no clause stating "subject to further advances" in the second lienholder portion of the title application or on the certificate of title. Therefore, the plaintiffs admit that, under Missouri law, they hold an unperfected second security interest dated April 11, 1989.

While the plaintiffs concede the unperfected second security interest, they contend that they have a priority security interest over that of the United States. The plaintiffs claim that the United States is in the position of "someone having acquired a judgment arising out of an unsecured obligation." The plaintiffs contend that under Missouri law, a judgment does not become a personal property lien until levy. The plaintiffs claim that the United States holds a subsequently acquired judgment which was obtained November 6, 1989 (the first time unpaid assessments were claimed by the IRS). Therefore, the United States, a "judgment creditor", obtained a judgment arising out of an unsecured obligation, and is without a judgment lien. The plaintiffs further claim that the United States is not even a secured party under the meaning of MO.REV.STAT. § 400.9–312(5)(b). Thus, the plaintiffs contend that their security interest takes priority over the Government's claim.

The plaintiffs' argument would be plausible, except for the fact that the Code presupposes that the hypothetical creditor such as the IRS not only has a judgment, but also a judgment lien. Section 6323(h)(1)(a) states "A security interest exists at any time ... the property is in existence and the interest has become protected under local law against a subsequent judgment *lien* arising out of an unsecured obligation ..." (emphasis added). As the United States points out, the plaintiffs' interpretation incorrectly eliminates the word "lien" from this Code section. Putting the IRS in the place of a creditor who has no lien would allow another creditor to easily prevail over a filed federal tax lien in any priority dispute involving personal property.

The IRS stands in the shoes of a creditor with a judgment lien. Section 400.9–301(1)(b) MO.REV.STAT. (1990) states that an unperfected security interest (such as the plaintiffs') is subordinate to a judgment lien creditor (such as the IRS). Mark Twain Bank's second security interest is not protected under Missouri law against a subsequent judgment lien creditor arising from an unsecured obligation. Therefore, because the plaintiffs do not qualify as a security interest holder under Code Section 6323(h)(1), the government has a superior interest in the truck.

For the forgoing reasons this Court finds that the Government's tax lien is superior in interest to the plaintiffs' claim. Therefore, the Court shall now dissolve the September 16, 1991 temporary restraining order, and shall deny the plaintiffs' request for a preliminary injunction.

Accordingly,

IT IS HEREBY ORDERED that the defendant's motion to dissolve the temporary restraining order be and is GRANTED. The temporary restraining order issued by this Court on September 16, 1991, is DISSOLVED, effective immediately.

IT IS FINALLY ORDERED that the defendant's motion to dismiss and request for costs be and is GRANTED in part and DENIED in part. The plaintiffs' complaint is hereby DISMISSED with each party to

bear their respective costs, including any storage or other costs associated with the sale of the seized Ford truck.