*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: SPEARING TOOL AND MANUFACTURING CO., INC.,

*Debtor.*

_____

UNITED STATES OF AMERICA,

*Appellant,*

*v.*

CRESTMARK BANK; CRESTMARK FINANCIAL CORPORATION,

*Appellees.*

No. 04-1053

>

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 03-72070—Nancy G. Edmunds, District Judge.

Argued: March 11, 2005

Decided and Filed: June 21, 2005

Before: BOGGS, Chief Judge; COOK and BRIGHT, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** Teresa E. McLaughlin, DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, D.C., for Appellant. Steven P. Ross, SHAHEEN, JACOBS & ROSS, Detroit, Michigan, for Appellees. **ON BRIEF:** Teresa E. McLaughlin, Michael J. Haungs, DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, D.C., for Appellant. Steven P. Ross, William R. Huffman, SHAHEEN, JACOBS & ROSS, Detroit, Michigan, Richard E. Shaw, HAMOOD & FERGESTROM, Troy, Michigan, for Appellees. Joseph A. Kuiper, Jeffrey O. Birkhold, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, Laurie A. Thompson, Michael W. Ullman, ULLMAN, ULLMAN & VAZQUEZ, Boca Raton, Florida, Lloyd M. Green, OTTERBOURG, STEINDLER, HOUSTON & ROSEN, New York, New York, for Amici Curiae.

---

[*]The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

---

**OPINION**

---

COOK, Circuit Judge.  In this case arising out of bankruptcy proceedings, the government appeals the district court's reversal of the bankruptcy court's grant of summary judgment for the government.  For the following reasons, we reverse the district court, and affirm the bankruptcy court.

## I.  Background and Procedural History

In April 1998, Spearing Tool and Manufacturing Co. and appellee Crestmark[1] entered into a lending agreement, which granted Crestmark a security interest in all of Spearing's assets.  The bank perfected its security interest by filing a financing statement under the Uniform Commercial Code, identifying Spearing as "Spearing Tool and Manufacturing Co.," its precise name registered with the Michigan Secretary of State.

In April 2001, Spearing entered into a secured financing arrangement with Crestmark, under which Crestmark agreed to purchase accounts receivable from Spearing, and Spearing granted Crestmark a security interest in all its assets.  Crestmark perfected its security interest by filing a UCC financing statement, again using Spearing's precise name registered with the Michigan Secretary of State.

Meanwhile, Spearing fell behind in its federal employment-tax payments.  On October 15, 2001, the IRS filed two notices of federal tax lien against Spearing with the Michigan Secretary of State.  Each lien identified Spearing as "SPEARING TOOL & MFG. COMPANY INC.," which varied from Spearing's precise Michigan-registered name, because it used an ampersand in place of "and," abbreviated "Manufacturing" as "Mfg.," and spelled out "Company" rather than use the abbreviation "Co."  But the name on the IRS lien notices was the precise name Spearing gave on its quarterly federal tax return for the third quarter of 2001, as well as its return for fourth-quarter 1994, the first quarter for which it was delinquent.  For most of the relevant tax periods, however, Spearing filed returns as "Spearing Tool & Manufacturing"—neither its precise Michigan-registered name, nor the name on the IRS tax liens.

Crestmark periodically submitted lien search requests to the Michigan Secretary of State, using Spearing's exact registered name.  Because Michigan has limited electronic-search technology, searches disclose only liens matching the precise name searched—not liens such as the IRS's, filed under slightly different or abbreviated names.[2]  Crestmark's February 2002 search results came back from the Secretary of State's office with a handwritten note stating: "You may wish to search using Spearing Tool & Mfg. Company Inc." But Crestmark did not search for that name at the time, and its exact-registered-name searches thus did not reveal the IRS liens.  So Crestmark, unaware of the tax liens, advanced more funds to Spearing between October 2001 and April 2002.

On April 16, 2002, Spearing filed a Chapter-11 bankruptcy petition.  Only afterward did Crestmark finally search for "Spearing Tool & Mfg. Company Inc." and discover the tax-lien

---

[1] We refer to both Crestmark Bank and Crestmark Financial Corporation as "Crestmark," the difference between them being immaterial here.

[2] The search engine ignores various "noise words" and their abbreviations, including "Incorporated" and "Company," but not "Manufacturing" or "and."

notices.  Crestmark then filed the complaint in this case to determine lien priority.  The bankruptcy court determined the government had priority; the district court reversed.  The questions now before us are whether state or federal law determines the sufficiency of the IRS's tax-lien notices, and whether the IRS notices sufficed to give the IRS liens priority.

## II.  Federal law controls whether the IRS's lien notice sufficed.

Crestmark argues Michigan law should control the form and content of the IRS's tax lien with respect to taxpayer identification.  The district court, though it decided in favor of Crestmark on other grounds, rightly disagreed.

When the IRS files a lien against a taxpayer's property, it must do so "in one office within the State . . . as designated by the laws of such State, in which the property subject to the lien is situated."  26 U.S.C. § 6323(f)(1)(A).  The Internal Revenue Code provides that the form and content "shall be prescribed by the [U.S. Treasury] Secretary" and "be valid *notwithstanding any other provision of law regarding the form or content of a notice of lien*."  26 U.S.C. § 6323(f)(3) (emphasis added).  Regulations provide that the IRS must file tax-lien notices using IRS Form 668, which must "identify the taxpayer, the tax liability giving rise to the lien, and the date the assessment arose."  26 C.F.R. § 301.6323(f)-1(d)(2).  Form-668 notice "is valid notwithstanding any other provision of law regarding the form or content of a notice of lien.  For example, omission from the notice of lien of a description of the property subject to the lien does not affect the validity thereof even though State law may require that the notice contain a description of property subject to the lien."  § 301.6323(f)-1(d)(1); *see also United States v. Union Cent. Life Ins. Co.*, 368 U.S. 291, 296 (1961) (Michigan's requirement that tax liens describe relevant property "placed obstacles to the enforcement of federal tax liens that Congress had not permitted.").

The plain text of the statute and regulations indicates Form-668 notice suffices, regardless of state law.  We therefore need only consider how much specificity federal law requires for taxpayer identification on tax liens.

## III.  The notice here sufficed.

An IRS tax lien need not perfectly identify the taxpayer.  *See, e.g., Hudgins v. IRS* (*In re Hudgins*), 967 F.2d 973, 976 (4th Cir. 1992); *Tony Thornton Auction Serv., Inc. v. United States*, 791 F.2d 635, 639 (8th Cir. 1986); *Reid v. IRS* (*In re Reid*), 182 B.R. 443, 446 (Bankr. E.D. Va. 1995).  The question before us is whether the IRS's identification of Spearing was sufficient.  We conclude it was.

The critical issue in determining whether an abbreviated or erroneous name sufficiently identifies a taxpayer is whether a "reasonable and diligent search would have revealed the existence of the notices of the federal tax liens under these names."  *Tony Thornton*, 791 F.2d at 639.  In *Tony Thornton*, for example, liens identifying the taxpayer as "Davis's Restaurant" and "Daviss (sic) Restaurant" sufficed to identify a business correctly known as "Davis Family Restaurant."  *Id.*  In *Hudgins*, the IRS lien identified the taxpayer as "Hudgins Masonry, Inc." instead of by the taxpayer's personal name, Michael Steven Hudgins.  This notice nonetheless sufficed, given that both names would be listed on the same page of the state's lien index.  967 F.2d at 977.

Crestmark argues, and we agree, that those cases mean little here because in each, creditors could search a physical index and were likely to notice similar entries listed next to or near one another—an option which no longer exists under Michigan's electronic-search system.  So the question for this case becomes whether Crestmark conducted a reasonable and diligent electronic search.  It did not.

Crestmark should have searched here for "Spearing Tool & Mfg." as well as "Spearing Tool and Manufacturing." "Mfg." and the ampersand are, of course, most common abbreviations—so common that, for example, we use them as a rule in our case citations. Crestmark had notice that Spearing sometimes used these abbreviations, and the Michigan Secretary of State's office *recommended* a search using the abbreviations. Combined, these factors indicate that a reasonable, diligent search by Crestmark of the Michigan lien filings for this business would have disclosed Spearing's IRS tax liens.

Crestmark argues for the unreasonableness of requiring multiple searches by offering the extreme example of a name it claims could be abbreviated 288 different ways ("ABCD Christian Brothers Construction and Development Company of Michigan, Inc."). Here, however, only two relevant words could be, and commonly are, abbreviated: "Manufacturing" and "and"—and the Secretary of State specifically recommended searching for those abbreviations. We express no opinion about whether creditors have a general obligation to search name variations. Our holding is limited to these facts.

Finally, we note that policy considerations also support the IRS's position. A requirement that tax liens identify a taxpayer with absolute precision would be unduly burdensome to the government's tax-collection efforts. Indeed, such a requirement might burden the government at least as much as Crestmark claims it would be burdened by having to perform multiple lien searches. "The overriding purpose of the tax lien statute obviously is to ensure prompt revenue collection." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 734-35 (1979). "[T]o attribute to Congress a purpose so to weaken the tax liens it has created would require very clear language," which we lack here. *Union Central*, 368 U.S. at 294. Further, to subject the federal government to different identification requirements—varying with each state's electronic-search technology—"would run counter to the principle of uniformity which has long been the accepted practice in the field of federal taxation." *Id.*

Crestmark urges us to require IRS liens to meet the same precise-identification requirement other lien notices now must meet under Uniform Commercial Code Article 9. *See* Mich. Comp. Laws § 440.9503(1) ("A financing statement sufficiently provides the name of [a] debtor [that is] a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized."). We decline to do so. The UCC applies to transactions "that create[] a security interest in personal property or fixtures *by contract*." Mich. Comp. Laws § 440.9109(1)(a) (emphasis added). Thus, the IRS would be exempt from UCC requirements even without the strong federal policy favoring unfettered tax collection.

More importantly, the Supreme Court has noted that the United States, as an involuntary creditor of delinquent taxpayers, is entitled to special priority over voluntary creditors. *See, e.g., Kimbell Foods*, 440 U.S. at 734-35, 737-38. Thus, while we understand that a requirement that the IRS comply with UCC Article 9 would spare banks considerable inconvenience, we conclude from Supreme-Court precedent that the federal government's interest in prompt, effective tax collection trumps the banks' convenience in loan collection.

## IV. Conclusion

We reverse the district court and affirm the bankruptcy court's grant of summary judgment for the government.