UNITED STATES of America,
Plaintiff,

v.

CARIÑOS AMBULANCE SERVICE,
INC., et al., Defendants.

Civil No. 07–1154 (ADC).

United States District Court,
D. Puerto Rico.

Sept. 17, 2009.

Ann E. Nash, U.S. Department of Justice, Washington, DC, for Plaintiff.

Cariños Ambulance Service, Inc., Carolina, PR, pro se.

Roberto Padró–Rosado, Carolina, PR, pro se.

Luis R. Rivera–Rodriguez, Luis Rafael Rivera Law Office, San Juan, PR, Jenaro A. Medina–Rosario, Jenaro A. Medina Law Office, Carolina, PR, for Defendants.

Hogar Carino, Inc., Carolina, PR, pro se.

## OPINION AND ORDER

AIDA M. DELGADO–COLON, District Judge.

Plaintiff, United States of America ("plaintiff" or "the government"), brings suit pursuant to 26 U.S.C. § 7403(a), seeking to reduce to judgment federal income tax, penalty, and interest assessments against Cariños Ambulance Service, Inc. ("Cariños"), and to foreclose related federal tax liens against real property located in Carolina Puerto Rico, at # 50 Barrio San Antón ("the Carolina property"). **Docket No. 1**, at ¶ 1. Plaintiff also seeks to reduce to judgment liabilities imposed under 26 U.S.C. § 6672 against Roberto Padró–Rosado ("Padró"), as a responsible person of Cariños, including penalty and interest accruing thereon. *Id.* The following parties have been included as defendants, pursuant to 26 U.S.C. § 7403(b), EM Development Corporation ("EM"), Hogar Cariño, Inc. ("Hogar Cariño"), and RG Premier Bank of Puerto Rico ("RG" or "Defendant").[1]

Now before the court is plaintiff's motion for summary judgment, statement of uncontested material facts, and memorandum in support thereof, as well as defendant's opposition, and statement of uncontested material facts. **Docket Nos. 31, 48.** Plaintiff has requested that its federal tax liens on all property and property rights of Cariños and Padró, including Cariños' interest in the Carolina property, be declared valid and subsisting. Additionally, plaintiff argues that its liens on the Carolina property have priority over RG's mortgage liens. RG has opposed plaintiff's petition, arguing that its mortgage liens are superior in order when compared to plaintiff's federal tax liens.[2] To sustain its assertion, defendant contends that Article 144 of the Puerto Rico Mortgage Law, P.R. Laws Ann., tit. 30, § 2468, as well as the expiring of the ten (10) year collection period disposed by Section 6502(a)(1) of the Internal Revenue Code (IRC), 26 U.S.C. § 6502(a)(1), have made plaintiff's cause of action time barred. For the reasons set forth below, the court **DENIES** plaintiff's motion.

## I. Factual Background

Unless otherwise noted, the following relevant facts are derived from plaintiff's statement of facts and defendant's responses. **Docket Nos. 31, 48.** Consistent with the summary judgment standard, the

---

1. The defendants claim possession of a lien and/or interest in the property herein involved. The court entered default against Cariños, Padró, EM, and Hogar Cariño on September 5, 2007. **Docket No. 25.** The government has submitted motions for default judgment against the mentioned parties. **Docket Nos. 33, 44.** Said motions are pending adjudication.

2. In its opposition to plaintiff's motion for summary judgment, rather than in a separate motion for summary judgment, RG requests from the court that its mortgage liens be declared superior in nature to the government's federal tax liens.

court states the facts in the light most favorable to defendant, the nonmoving party. *See Iverson v. City of Boston,* 452 F.3d 94, 98 (1st Cir.2006).

## A. Tax Liability Assessments Against Cariños

1. During the years 1996 and 1997, the Commissioner of the Internal Revenue Service ("the Commissioner") made tax deficiency assessments against Cariños after said corporation failed to pay employment taxes, penalties, and interest. Declaration of Carmelo González, **Docket No. 31–3** ("González Decl. No. 1"), at ¶ 3; Plaintiff's Statement of Uncontested Facts, **Docket No. 31–2** ("PSUF"), at ¶ A, 1; Defendant's Statement of Uncontested Facts, **Docket No. 48** ("DSUF"), at ¶¶ 1 & 2.

2. Concretely, the Commissioner assessed tax deficiencies against Cariños during the year 1996 for the following tax periods and on the following dates:

| Tax Period Assessed | Assessment Date |
|---|---|
| December 31, 1994 | December 09, 1996 |
| September 30, 1995 | January 01, 1996 |
| December 31, 1995 | November 04, 1996 (Form 941) |
| December 31, 1995 | December 09, 1996 (Form 940) |
| March 31, 1996 | June 03, 1996 |
| June 30, 1996 | November 18, 1996 |
| September 30, 1996 | December 16, 1996 |

PSUF, at ¶ A, 1 [3]; González Decl. No. 1, at ¶¶ 2 & 3; DSUF, at ¶ 1; **Docket No. 31–3**, at Ex. 1–7, & 10.

3. For the year 1997, the tax periods assessed and the dates of said assessments are as follows:

| Tax Period Assessed | Assessment Date |
|---|---|
| December 31, 1996 | April 14, 1997 |
| March 31, 1997 | June 16, 1997 |

PSUF, at ¶ A, 1; González Decl. No. 1, at ¶¶ 2 & 3; DSUF, at ¶ 2; **Docket No. 31–3**, at Ex. 4, 5, & 8.

4. On April 11, 1997, the Internal Revenue Service ("IRS") filed a Notice of Federal Tax Lien ("NFTL") at Section two (2) of the Carolina Registry of Deeds, indexing Cariño's unpaid tax debt at the sum of $89,536.92. PSUF, at ¶ A, 1; González Decl. No. 1, at ¶ 5; DSUF, at ¶ 4; **Docket No. 31–3**, at Ex. 7.

5. The previously stated sum was derived from the following assessed tax periods: December 31, 1994; September 30, 1995; December 31, 1995; March 31, 1996; June 30, 1996; and September 30, 1996. **Docket No. 31–3**, at Ex. 7.

6. On October 23, 1997, the IRS filed an additional NFTL for the amount of $25,523.47 at Section two (2) of the Carolina Registry of Deeds. PSUF, at ¶ B, 1; González Decl. No. 1, at ¶ 5; DSUF, at ¶ 5.

7. Particularly, the previously stated sum was derived from the December 31, 1996 and the March 31, 1997 assessed tax periods. **Docket No. 31–3,** at Ex. 8.

8. On August 02, 2006, plaintiff refiled the April 11, 1997, and the October 23, 1997, NFTLs. PSUF, at ¶ B, 2; González Decl. No. 1, at ¶ 6; DSUF, at ¶ 7; **Docket No. 31–2**, at Ex. 9 & 10.

9. The following assessed tax periods were registered by plaintiff in the named NFTLs: December 31, 1995 (Form 940 and 941); June 30, 1996;

**3.** Plaintiff has stated that the Commissioner made tax assessments against Cariños for the fourth quarter of 1995, the second, third, and fourth quarters of 1996, and the first quarter of 1997. Since defendant's assertions of the assessed tax deficiencies are more specific, derives from the same evidence presented by plaintiff, and identical to plaintiff's general statement of facts, the court takes RG's detailed statement of the assessed tax periods for purposes of this motion.

September 30, 1996; December 31, 1996; and March 31, 1997.[4]  **Docket No. 31–3,** at Ex. 9 & 10.

10.  The total amount of Cariños' assessed tax debt, as stated in the refiled NFTLs, was $98,538.99.[5]  *Id.*  However, understanding that interest accrues under 26 U.S.C. § 6601 for any unpaid tax balance, the Commissioner further assessed Cariños' unpaid tax balance at $243,597.28, as of June 19, 2009.[6]  **Docket No. 44–2,** at 2;  Declaration of Carmelo González, **Docket No. 44–3** ("González Decl. No. 2"), at ¶ 2.

### B.  Tax  Liability  Assessments Against Padró

11.  The Commissioner likewise made tax assessments against Padró for trust fund recovery penalty taxes for the period ending June 30, 1997, due to his failure to collect, account for, and pay over taxes withheld from the wages of employees of Cariños.[7]  PSUF, at ¶ 3; González Decl. No. 1, at ¶ ¶ 8 & 9; González Decl. No. 2, at ¶ ¶ 8–10.

12.  As of June 19, 2009, the unpaid debt balance owed by Padró, including the accrued interest, was $117,732.73.  González Decl. No. 2, at ¶ 8.

### C.  Conveyance of the Carolina Property

13.  Finally, on April 10, 1997, one day before plaintiff filed its first NFTL, Cariños conveyed the Carolina property to EM. DSUF, at ¶ 3;  **Docket No. 48,** at

Ex. A. However, the deed establishing such conveyance was presented at the Registry of Deeds of Puerto Rico on June 8, 2002, five (5) years after plaintiff filed its NFTLs.  **Docket No. 48,** at Ex. A.; **Docket No. 33–2,** at 3.

14.  Later, EM conveyed the Carolina property to Hogar Cariño on December 16, 2004.  DSUF, at ¶ 6;  **Docket No. 48,** at Ex. B; **Docket No. 33–2,** at 3.

## II.  Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits." *Thompson v. Coca–Cola Co.,* 522 F.3d 168, 175 (1st Cir.2008) (citing Fed. R. Civ P. 56(c)).  When ruling on a motion for summary judgment, the court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences." *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004).  The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000) (quoting *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990)).  In addition, the "absence of evidence on a critical issue weighs against the party—be it either the movant or nonmovant—who would bear the burden of proof on that

---

4.  The court notes that once plaintiff desisted from refiling a NFTL for the September 30, 1995, March 31, 1996, and the December 31, 1994, assessed tax periods, plaintiff abstained from pursuing judgment based on the mentioned liabilities.

5.  Sum of unpaid balances as stated in **Docket No. 31–2,** at Ex. 9 & 10: ($25,523.47 plus $98,538).

6.  Defendant has not denied or otherwise contested the government's assessment of the accrued interest on Cariño's tax liability as of June 19, 2009.

7.  The court notes that defendant has not denied or otherwise contested the Commissioner's assessment of Padró's tax liability in its statement of uncontested facts.

issue at trial." *Alamo–Rodríguez v. Pfizer Pharma.*, 286 F.Supp.2d 144, 151 (D.P.R. 2003) (citing *Pérez v. Volvo Car Corp.*, 247 F.3d 303, 310 (1st Cir.2001)).

"A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Thompson*, 522 F.3d at 175 (quoting *Sánchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir.1996)) (internal quotation marks omitted). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir.2008). To defeat a properly supported motion for summary judgment, evidence offered by the non-movant "must be significantly probative of specific facts." *Pérez*, 247 F.3d at 317 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As a rule, "[e]vidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." *Vázquez v. López–Rosario*, 134 F.3d 28, 33 (1st Cir.1998). Finally, it is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## III. Discussion

### A. Validity, Subsistence, and Priority of Plaintiff's Liens

"[A] lien is one of the means authorized by law for the government to protect its position as a creditor in its efforts to enforce [the] collection of taxes." *Griswold v. United States*, 59 F.3d 1571, 1574 (11th Cir.1995). As established by Section 6321 of the IRC:

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321; *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.1992). With regards to the subsistence and duration of a federal tax lien, Section 6322 ascertains that "the lien imposed by [S]ection 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C. § 6322.

"Once a lien arises, federal law governs the priority of competing liens asserted against a taxpayer's property." *Griswold*, 59 F.3d at 1575 (quoting *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960)). As such, priority is established by the adage rule, *prior tempore, prior jure*, which concedes that whoever is "first in time, [is] first in right." *Id.* (quoting *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 98 L.Ed. 520 (1954)). However, if a lien has risen under Section 6321, and a notice in accordance with Section 6323(f)(4) has not been duly registered, the lien "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the [Commissioner]." 26 U.S.C. § 6323(a). Therefore, if the IRS pursues a lien against a taxpayers real property that is opposable against third parties, it must file the NFTL "in one office within the State ... as designated by the laws of such State, in which the property subject to the lien is situated", 26 U.S.C.

§ 6323(f)(1)(A), and the lien must be duly indexed if such exigency is established under State law. 26 U.S.C. § 6323(f)(4). Although Section 6323(f)(1)(A) & (4) compels the government to file the NFTL at the registry of the State where such property is deemed situated, "[t]he creation, form, and priority of federal tax liens are matters of federal law." *Tracey v. United States*, 394 B.R. 635, 640 (1st Cir.BAP 2008); *see also United States v. Crestmark Bank*, 412 F.3d 653, 655 (6th Cir.2005); 26 C.F.R. 301.6323(f)–1(d)(1)(2).

In the jurisdiction of Puerto Rico, an NFTL complies with Section 6323(f)(1)(A) & (4) when the same is befittingly indexed in the 'Registry of Liens for taxes in favor of the United States of America' at the Puerto Rico Registry of Deeds ("Registry"). P.R. Laws Ann., tit. 30, § 1921 ("Puerto Rico Mortgage Law"). As required by the Puerto Rico Mortgage Law, the indexing of an NFTL entails presenting the same "for registration in the section of the registry of property of the district where the real [property] affected [is] located." *Id.* at § 1922. After the registration of the NFTL, the same is filed "in correlative number, in a record to be kept in the registry." *Id.* The existence of a lien is properly corroborated through certifications issued by the Registrars. *Id.* at § 2105. Furthermore, "[t]he existence or absence of liens on real property or real rights can only be prejudicial to third parties when certified by the Registry." *Id.* at § 2106.

In the case at hand, the Commissioner effectuated tax deficiency assessments against Cariños for the following tax periods: December 31, 1994; September 30, 1995; December 31, 1995; March 31, 1996; June 30, 1996; September 30, 1996; December 31, 1996; and, March 31, 1997. Pursuant to Section 6321, once Cariños neglected or refused to pay the assessed tax liabilities, a lien in favor of the United States automatically rose on the corresponding assessment dates, upon all property and rights to property of Cariños, including the Carolina property. Plaintiff further asserts that in accordance with 26 U.S.C. § 6323(f)(4), the tax assessments previously mentioned were registered as NFTLs on April 11, 1997 and October 23, 1997 at the Registry. As such, the government claims that in accordance with the "first in time, first in right" criterion, the indexed NFTLs are endowed with a priority status that supercedes any future lien, including RG's alleged December 16, 2004 mortgage liens. The government further alleges that once the liens were refiled on August 2, 2006, plaintiff maintained the NFTL's priority status, hence, any future lien that may attach to the Carolina property prior to the refiling of the NFTLs is junior to the government's interest.

█ To sustain its assertion as to the existence of valid and subsisting NFTLs indexed at the Registry, the government rests on three IRS-originated sources of corroboration: (1) the declarations of IRS officer Carmelo González; (2) account transcripts from the IRS which state that federal tax liens were filed; and, (3) documents labeled 'Internal Revenue Service Facsimile Federal Tax Lien Document'. However, the government has failed to submit evidence with regards to the actual inscription of the federal tax liens at the 'Registry of Liens for taxes in favor of the United States of America', or any type of certification emitted by the Registry as established by Sections 2105 and 2106 of the Puerto Rico Mortgage Law. The government seeks a judgment from the court that validates its federal tax liens as superior to any additional existing interest upon the Carolina property, but provides no evidence originating from the Registry, the central indexing location established

by the Puerto Rico Mortgage Law. Although the court does recognize that pursuant to Sections 6321 and 6322 of the IRC a valid lien did automatically arise once Cariños neglected to pay the assessed taxes, the superiority status of the mentioned liens may not be attested at this moment due to the government's failure to submit any certification from the Registry concerning the government's registration of the NFTL's, as required by the Puerto Rico Mortgage Law and Section 6323(f)(1)(A) & (4) of the Internal Revenue Code. Hence, the court **DENIES** plaintiff's motion for summary judgment with regards to the acknowledgment of a priority status of the federal tax liens attached to the Carolina property in favor of the government.

### B. Validity, Subsistence, and Priority of Defendant's Lien

On the other hand, defendant requests the court find that its mortgage liens hold a priority status over the government's federal tax liens. *See Defendant's Opposition,* **Docket No. 48,** at 2. To sustain its averment, defendant has resorted to Article 144 of the Puerto Rico Mortgage Law, which prescribes that "[p]roperty Registrars shall cancel notations of tax embargoes six years after the date of the respective entry, at the request of a party, by notarized affidavit." P.R. Laws Ann., tit. 30, § 2468. Grounded on the mentioned legal disposition, defendant argues that the April 11, 1997, and the October 23, 1997, NFTLs registered by IRS in the Registry, expired on April 11, 2003, and on October 23, 2003, respectively. **Docket No. 48,** at 3. As a result, RG asserts that since the August 02, 2006 refiling of the NFTLs was recorded after RG's December 16, 2004

mortgage liens, the government's NFTLs are inferior to defendant's mortgage liens as established by Section 6323(g)(1) of the IRC.[8] However, defendant has failed to recognize that Article 144 demands that the party interested in canceling any existing notations of tax embargoes request the same through the means of a notarized affidavit. Furthermore, the Puerto Rico Supreme Court has established that "it is incumbent upon the Registrar of Property to determine, through the examination of the pertinent books of the Registry of Property, whether cancellation of the attachment lies because of the lapse of the six-year term prescribed in sec. 144 of the Mortgage and Property Registry Act." *Roda Dev. Corp. v. Registrador,* 123 D.P.R. 547 (1989), 1989 WL 607308 (P.R., Apr. 6, 1989), 23 P.R. Offic. Trans. 479. After examining defendant's supporting documents for its opposition to plaintiff's motion for summary judgment, the court is unable to identify or locate any affidavit or petition submitted by any party requesting that the federal tax liens be canceled due to the passing of time. Moreover, RG has not submitted a certification from the Puerto Rico Registry, ascertaining the Registrar's examination of the books of the Registry and his or her acceptance of said petition through the corresponding approval of the cancellation of the federal tax liens.

■ In the alternative, defendant contends that the two (2) deeds which aver the conveyance of the Carolina property from Cariños to EM, and from EM to Hogar Cariño, all fail to acknowledge the existence of any federal tax lien after the completion of a title study. Although such

---

8. "Unless notice of lien is refiled in the manner prescribed in paragraph (2) during the required refiling period, such notice of lien shall be treated as filed on the date on which it is filed (in accordance with subsection (f)) after the expiration of such refiling period." 26 U.S.C. 6323(g)(1).

contention as to the nonexistence of the federal tax liens is asserted by defendant, the same is not corroborated by a certification of the Registrar of the Property Registry as required by Sections 2105 and 2106 of the Puerto Rico Mortgage Law, or by a copy of the mentioned title study. As determined by the Puerto Rico Mortgage Law, "[t]he existence or absence of liens on real property or real rights can only be prejudicial to third parties when certified by the Registry" (P.R. Laws Ann., tit. 30, § 2106) and "[r]egistered titles shall become effective for third parties from the date of their registration." *Id.* at § 2255. In the case at hand, since defendant has also failed to submit a certification issued by the Registry as to the existence of a valid mortgage lien indexed in its favor, the court is not in a position to determine that RG's lien is superior in relation to third parties as prescribed by the "first in time, first in right" adage, or to even conclude that the mortgage lien exists. As a result, the court **DENIES** RG's request.

## C. Expiration of the Federal Tax Collection Period

RG's asserts that the government is time-barred from collecting the December 31, 1995, June 30, 1996, and the September 30, 1996 tax periods assessed against Cariños and Padró, since the ten (10) year collection period established by Section 6502(a)(1) of the IRC has expired. **Docket No. 48**, at 5–6. Since the government has failed to present any opposition to defendant's previously stated argument, the court must proceed to consider if the mentioned assessed tax periods are time-barred.

▋ Once a tax liability assessment has been made within the properly applicable period of limitation, "such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceed-

ing begun within 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1). "Therefore, in order to bring an action to enforce a lien foreclosure, the government must bring suit in accordance with [the] 10–year statute of limitations period." *United States v. Berk*, 374 B.R. 385, 392 (D.Mass.2007). After the initiation of a timely proceeding in court for the collection of a tax deficiency, "the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable." 26 U.S.C. § 6502(a).

However, certain circumstances exist which toll the running of the statute of limitations period established by Section 6502. As determined by Section 6503, for example, the following conditions foster the suspension of the period of limitations provided in Section 6502:(1) when the taxpayer requests a Collection Due Process hearing ("CDP hearing") as established by Sections 6320 and 6330 of the IRC; (2) for the period that a taxpayer's assets are in control or custody of a court of law; (3) for the period that a taxpayer is absent from the United States for a continuous term of six (6) months or more; and, (4) from the time the IRS wrongfully seizes property belonging to a person other than the taxpayer until the IRS returns the property or the third party obtains a judgment under Section 7426 of the IRC. 26 U.S.C. § 6503. Other legal provisions scattered within the IRC also provide for the suspension of the ten (10) year collection process, for example: (1) certain cases under title eleven (11) of the Bankruptcy Code, (26 U.S.C. 6503(h)(1) & (2)); (2) the date the taxpayer submits Form 911 (Application for Taxpayer Assistance Order) until the date when the National Taxpayer Advocate decides with regards to the submit-

ted application, (26 U.S.C. § 7811(d)(1)), among others.

■ In the present case, the court identifies two actions conducted by the IRS after the tax deficiencies were assessed for the indicated tax periods. These actions are the refiling of the NFTLs on August 02, 2006, and the filing of a complaint before the court on February 23, 2007. With regards to the refiling of a NFTL, federal case law has determined that such an action does not extend the ten (10) year collection period. *United States v. Hoklin,* 2008 WL 2699732, at *7 n. 10, 2008 U.S. Dist. LEXIS 51068, at *20 n. 10 (D.Minn., Jul. 2, 2008). The refiling of a NFTL "[affects] only the validity of a tax lien with respect to third parties." *Id.* Concerning the filing of a complaint before the court, the IRC establishes that when "a timely proceeding in court for the collection of a tax is commenced," the ten (10) year collection period is extended under Section 6502. 26 U.S.C. § 6502(a). Hence, since the action of refiling a federal tax lien does not extend the collection period, and considering that the government has not invoked any of the known conditions that extend the ten (10) year collection period under Section 6503 or any other legal disposition within the IRC that will extend it; any tax liability assessed prior to the filing of the present complaint is time-barred. Therefore, the court **DISMISSES WITH PREJUDICE** the government's liability collection claim with regards to the following assessed tax periods due to the expiration of the ten (10) year collection period: December 31, 1996; June 30, 1996; and September 30, 1996. The only remaining assessed tax liabilities

enduring the court's determination correspond to the December 31, 1996 and the March 31, 1997 tax periods. These tax periods were assessed on April 14, 1997 and June 16 1997, respectively, and were still within the ten (10) year collection period before such term was extended by the February 02, 2007 filing of the complaint. Finally, although the IRS argues that the statute of limitations period was extended under 26 U.S.C. § 6330(d) [9] **(Docket No. 1,** at ¶ 14), no evidence has been submitted by the government to that effect. As such, the court is not in a position to acknowledge the government's allegation regarding a CDP hearing that extended the statute of limitations period.

## D. Fraudulent Conveyance to EM and Hogar Cariño

Plaintiff and defendant have brought to the attention of the court issues regarding the conveyance of the Carolina property. Defendant particularly argues that due to the transfer of the Carolina property to EM, and later to Hogar Cariño, the government cannot foreclose its lien upon the property since Cariños (the delinquent taxpayer) does not hold the title to the same. **Docket No. 48,** at 4. Plaintiff argues that the conveyance occurred after the filing of the NFTLs, hence the conveyance was subject to the federal tax liens, and that the same was done with the intention of defrauding the government in order to avoid paying taxes. **Docket No. 1,** at ¶ 33–37.

Since the government has failed to present certifications by the Registrar concerning its alleged liens against the Carolina property, the court need not address the

---

9. The government has erroneously cited Section 6330(d) which governs the proceedings after the CDP hearing to argue that its claim is within the statute of limitations period. The court interprets that the government in-

tended to cite Section 6330(e) which addresses the suspension of collections and the statute of limitations when a CDP hearing has been requested by the taxpayer.

issue of whether the government may foreclose against Hogar Cariño as a transferee of Cariños.

## IV. Conclusion

Based on the above, plaintiff's motion for summary judgment (**Docket No. 31**) is **DENIED.** The court **GRANTS** defendant's request to the extent that the tax liabilities assessed for the periods of December 31, 1996; June 30, 1996; and, September 30, 1996, are time-barred. The only surviving tax liabilities are the December 31, 1996 (assessed on April 14, 1997), and the March 31, 1997 (assessed on June 16, 1997) tax periods.

**SO ORDERED.**